

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-31-2007

# Si v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2686

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Si v. Atty Gen USA" (2007). *2007 Decisions.* Paper 670.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/670

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 06-2686

————

LINDAWATI SI,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

Respondent

————

Petition for Review of an Order
of the Board of Immigration Appeals
No. A96-259-961
Immigration Judge: Miriam K. Mills

————

Submitted Under Third Circuit LAR 34.1(a)

July 12, 2007

Before: SLOVITER, ALDISERT and ROTH, <u>Circuit Judges</u>.

(Filed: July 31, 2007)

————

OPINION OF THE COURT

————

ALDISERT, Circuit Judge.

Lindawati Si, a native and citizen of Indonesia, petitions for review of a final order of the Board of Immigration Appeals ("BIA" or "Board").  The Immigration Judge ("IJ") denied her application for withholding of removal and relief under the Convention Against Torture ("CAT").  Petitioner then unsuccessfully appealed to the Board.  We have jurisdiction to review the BIA's final order pursuant to 8 U.S.C. § 1252.  We will deny the Petition.

**I.**

The parties are familiar with the facts and proceedings before the BIA and the IJ, so we will revisit them only briefly.  Si is a Christian and an ethnically Chinese citizen of Indonesia.  On April 19, 2000, she entered the United States for an authorized six-month stay.  On July 16, 2003—almost three years after the expiration of her legal status—Si filed an application for asylum, withholding of removal and relief under CAT, however she withdrew her time-barred application for asylum because she was statutorily ineligible for relief.  In support of her application, Si argued that she suffered persecution in Indonesia on account of her religion and ethnicity.  She asserted persecution based on five alleged grounds: (1) being called "cheap Chinese," (2) sexual harassment in the form of groping, (3) an incident when a rock was thrown through the window of her church, (4) demonstrators beating sticks on a car she was riding in, and (5) a robbery in which she did not suffer physical injury.  App. 345.

2

The IJ who considered Si's case rejected her argument on all grounds. She decided that Si did not qualify for withholding of removal because she had failed to establish past persecution or that it was more likely than not that she would suffer future persecution. See 8 C.F.R. § 1208.16 (governing withholding of removal claims). Specifically, the IJ determined that the incidents alleged were not sufficient to support a finding of past persecution on account of ethnicity or religion. The IJ also determined that recent reports on country conditions in Indonesia undercut Si's argument that she would suffer future persecution if she returned. Turning to Si's request for protection under CAT, the IJ concluded that she had failed to prove it was more likely than not that she would be tortured by, or with the acquiescence of, the government. See 8 C.F.R. § 1208.16 (governing CAT claims).

The BIA affirmed and adopted the IJ's findings. Specifically, the BIA agreed with the IJ that Si did not establish that it was more likely than not that she would be persecuted or tortured upon return to Indonesia.

Si petitions this Court to review the decision of the Board.

**II.**

We now turn to the standard of review for Si's petition. We must give significant deference to the BIA's decision. The decision must be upheld if it is supported by "substantial evidence," INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992), and "can only be reversed if the evidence is such that a reasonable fact finder would be compelled to

3

conclude otherwise." Chavarria v. Gonzales, 446 F.3d 508, 515 (3d Cir. 2006).

Although we generally review only the decisions of the BIA, where the BIA both adopts

the findings of the IJ and discusses some of the bases for the IJ's decision, we review the

decisions of both the IJ and the BIA. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004).

## III.

The law surrounding withholding of removal is well-settled. To be entitled to

withholding of removal, an alien must demonstrate that "'it is more likely than not that

[she] would be subject to persecution' in the country to which [she] would be returned."

INS v. Cardoza-Fonseca, 480 U.S. 421, 423 (1987) (quoting INS v. Stevic, 467 U.S. 407,

429-430 (1984)). An alien can establish eligibility for withholding of removal either (1)

by creating a rebuttable presumption of future persecution by demonstrating past

persecution or, (2) by showing that it is more likely than not that she will suffer future

persecution. 8 C.F.R. § 1208.16(b); see 8 U.S.C. § 1101(a)(42)(A) (stating a petitioner

must meet the burden of showing persecution or a well founded fear of persecution on

account of race, religion, nationality, membership in a particular social group, or political

opinion). After review of the record, we conclude that substantial evidence supports the

IJ's conclusion that Si does not qualify for withholding of removal.

Si argues that the treatment she received at the hands of Muslim extremists and

ethnic Indonesians amounts to past persecution. Substantial evidence supports the IJ's

decision to the contrary. This Court has defined persecution to include "threats to life,

4

confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Lukwago v. Ashcroft, 329 F.3d 157, 168 (3d Cir. 2003) (citing Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993)). There is nothing in the record to indicate that the alleged incidents—being called "cheap Chinese," the sexual harassment, the incident when a rock was thrown through the window of her church, the demonstrators beating sticks on her car, or the robbery—were sufficiently severe to amount to persecution. App. 345; see Kibinda v. Attorney General, 477 F.3d 113, 119 (3d Cir. 2007) (quoting Fatin, 12 F.3d at 1240) (stating that persecution refers only to "severe" conduct and does not encompass all treatment our society regards as unfair, unjust or even unlawful). The only allegation that arguably approaches the level of severity required for persecution is the robbery Si suffered. In Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005), however, we held that an isolated robbery was not sufficiently severe to rise to the level of persecution when the only harms suffered were loss of property and minor injury. Unlike the petitioner in Lie, Si does not allege that she was assaulted or physically injured during the robbery. See id. Substantial evidence therefore supports the IJ's determination that the alleged events were not sufficiently severe to rise to the level of persecution.

We next turn to Si's contention that she will be subjected to future persecution in Indonesia because she is an ethnically Chinese Christian. Substantial evidence supports the IJ's holding that Si did not prove it is more likely than not that she will suffer future persecution. To establish a future persecution claim, petitioner must demonstrate by clear

5

probability either (1) that she would be singled out for persecution on account of her race or religion, or (2) that there is a "pattern or practice of persecution of a group of persons similarly situated to the applicant . . . ." 8 C.F.R. § 208.16(b)(2). To constitute a "pattern or practice," the persecution of a group must be "systemic, pervasive, or organized." Lie, 396 F.3d at 537 (quoting Ngure v. Ashcroft, 367 F.3d 975, 991 (8th Cir. 2004)).

Upon petition to this Court, Si does not argue that she will be singled out for future persecution, but contends that the treatment of Chinese Christians in Indonesia by Muslim extremists and ethnic Indonesians constitutes a pattern or practice of persecution. This argument is foreclosed by precedent in this Court. In Lie, 396 F.3d at 537-538, we held that ethnically Chinese Christians like Si do not face systemic persecution in Indonesia because any ongoing violence appears to be "wrought by fellow citizens" and not the result of "governmental action or acquiescence." See Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003) (holding that an act does not constitute persecution unless it is committed by the government or forces the government is either unable or unwilling to control).

Si has not demonstrated that conditions in Indonesia have changed since our decision in Lie. According to the 2003 International Religious Freedom Report on Indonesia, the worst of the interreligious fighting occurred in Central Sulawesi and the Malukus, areas to which Petitioner has no connection. Importantly, "[s]ome notable advances in interreligious tolerance and cooperation occurred . . . ," App. 270, and "the

6

Government encouraged tolerance . . . ." App. 283. We would not go so far as to say there is no evidence of problems with the policing of ethnic and religious violence in Indonesia, but the country reports support the conclusion that the Indonesian government is, on the whole, trying to prevent interreligious conflict. Substantial evidence therefore supports the IJ's conclusion that the violence is not sufficiently widespread or conducted with sufficient government involvement to qualify as persecution.

**IV.**

Si also argues that the IJ's CAT determination is not supported by substantial evidence. We disagree. Si must establish that "it is more likely than not" that she will be tortured if returned to Indonesia. See 8 C.F.R. § 208.16(c)(2). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). In evaluating whether an applicant is more likely than not to be tortured when returned, we consider evidence of past torture and conditions in the country of removal. 8 C.F.R. §§ 208.16(c)(3)(i), 208.16(c)(3)(iv).

Si does not argue that any of her experiences constituted torture, but she does argue that country conditions in Indonesia are sufficient to find that it is more likely than not that she would be tortured if returned. The record does not support this assertion. The State Department International Religious Freedom Report of 2003 states,

7

"[i]nterreligious violence plummeted, and peaceful conditions prompted many displaced persons to return to their homes." App. 124. Substantial evidence therefore supports the IJ's determination that country conditions in Indonesia are insufficient to find that it is more likely than not that Si will be tortured if returned. See Tarrawally v. Ashcroft, 338 F.3d 180, 188 (3d Cir. 2003) (quoting Kamalthas v. INS, 251 F.3d 1279, 1280 (9th Cir. 2001)) ("[C]ountry conditions alone can play a decisive role in granting relief under the Convention."). Accordingly, we hold that the denial of CAT relief was supported by substantial evidence.

******

We have considered all contentions of the parties and conclude that no further discussion is necessary.

The Petition for Review will be denied.