

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-2-2007

# Njo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1298

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Njo v. Atty Gen USA" (2007). *2007 Decisions.* Paper 630.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/630

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-1298
_____

EVA MIDAWATI NJO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A96-266-628
Immigration Judge: Miriam K. Mills

Submitted under Third Circuit LAR 34.1(a)
Thursday, May 24, 2007

Before: BARRY and CHAGARES, <u>Circuit Judges</u>,
and TASHIMA,[*] <u>Senior Circuit Judge</u>.

(Filed August 2, 2007)

OPINION OF THE COURT
_____

_____

[*]Honorable A. Wallace Tashima, Senior Circuit Judge, United States Court of
Appeals for the Ninth Circuit, sitting by designation.

TASHIMA, <u>Senior Circuit Judge</u>.

Eva Midyawati Njo,[1] an Indonesian citizen, petitions for review of a Board of Immigration Appeals ("BIA") decision summarily affirming an immigration judge's ("IJ") denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  Njo, who is Christian and ethnically Chinese, contends that she was persecuted on account of her religion and race in Indonesia.

I.

Njo entered the United States on a tourist visa in July 2002.  After overstaying her visa, Njo applied for asylum in April 2003.  She was subsequently placed in removl proceedings, where she conceded removability and renewed her application for asylum, withholding of removal, and CAT protection.  Njo's application was denied by an IJ in an oral decision following a merits hearing.

At her hearing before the IJ, Njo testified regarding two forms of alleged past persecution: an incident in which she was beaten by her neighbors, and harassment that she regularly experienced in the streets of Indonesia.  According to Njo, on one occasion in 1988 she was beaten by her neighbors, who were native Indonesians and Muslims.  Njo said that the neighbors intervened after Njo argued with a Muslim tenant of hers, and that she suffered bruises to her head from the beating.  The same neighbors allegedly called

---

[1]We adopt the spelling of Njo's name that she used in her initial asylum application, and before the immigration judge and Board of Immigration Appeals.

Njo racial epithets.

Njo also testified that harassment in the streets prevented her from going to church. She said that on her way to church on major Christian holidays, "taxi drivers would touch me improperly." She also said, "when I walk on the street, people on the street would . . . touch me on my arm, on my back, and call me names like Chink." She described the touching as "groping on my back." When asked how this harassment affected her, Njo said that she "had a miscarriage and . . . felt threatened." The IJ then asked, "what do you think would happen to you if you returned to Indonesia?" Njo answered, "I'm afraid of the bomb threats [toward churches]." When the IJ asked if Njo was afraid of anything else, Njo said no.

In her decision, the IJ first found that Njo was not credible regarding her inability to attend church in Indonesia. The IJ noted that although Njo testified at the hearing that harassment had prevented her from attending church, Njo had failed to include that information in her written asylum application. The IJ also pointed out that Njo failed to present affidavits to corroborate her claim that her family members remaining in Indonesia had similarly been prevented from attending church, though Njo said she spoke to her family there by phone every other day.

The IJ then found that Njo had not shown that she suffered past persecution. The IJ first noted Njo's allegation that she was beaten in 1988 by Muslim neighbors who used racial epithets against her. With regard to generalized persecution against Indonesians of Chinese ethnicity, the IJ recognized that the U.S. State Department's 2003 Country

3

Report on Human Rights Practices for Indonesia ("Country Report") described societal and systemic discrimination against ethnic Chinese. The IJ stated, however, that "none of the background articles [submitted by Njo] evidence that the harm[s] against [Indonesians of Chinese ethnicity] rise to the level of persecution." As to religious persecution, the IJ found that bombings of churches had subsided and more recent bombings had not occurred in Njo's home region of Indonesia. The IJ added that the fact that Njo had traveled to the United States and returned to Indonesia twice previously, in 2000 and 2001, without applying for asylum tended to confirm that Njo had not experienced past persecution and "had no well-founded fear" of future persecution. Based on this reasoning, the IJ denied Njo's request for asylum, withholding of removal, and CAT protection. The BIA summarily affirmed the IJ's decision.

## II.

Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision and reasoning directly. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). We will uphold the IJ's factual findings if they are supported by substantial evidence. Id. at 247-48. Overturning the IJ's factual findings is warranted only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## III.

An asylum applicant bears the burden of establishing her eligibility for asylum. 8 C.F.R. § 1208.13(a). To be eligible, the applicant must qualify as a refugee; this requires

a showing that she "is unable or unwilling to return to . . . [her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The applicant can meet this burden by: (1) showing past persecution, which creates a rebuttable presumption of a well-founded fear of persecution, or (2) establishing a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b).

In this case, substantial evidence supports the IJ's finding that Njo did not establish past persecution. We have adopted the BIA's definition of persecution as including "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," while recognizing that persecution "does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993) (citing Matter of Acosta, 19 I. & N. Dec. 211, 222 (BIA 1985)).

To support her claim of past persecution, Njo has relied on one beating that occurred almost fifteen years before her departure from Indonesia, and her experiences of being touched and called "Chink" on the street. Even assuming that both the beating and harassment occurred and were motivated by Njo's race and/or religion, these incidents were still not severe enough to qualify as persecution. See, e.g., Kibinda v. Attorney Gen., 477 F.3d 113, 119-20 (3d Cir. 2007) (holding that five-day detention and being hit by a prison guard, resulting in injury requiring seven stitches, did not amount to persecution); Gomes v. Gonzales, 429 F.3d 1264, 1267 (9th Cir. 2005) (holding that

5

harassment of petitioner's family on their way to weekly Catholic services did not rise to the level of persecution); Chen v. Ashcroft, 381 F.3d 221, 223, 234-35 (3d Cir. 2004) (holding that beating with sticks by officials which apparently did not result in any injuries requiring medical treatment did not constitute persecution). Therefore, Njo is not entitled to a presumption of a well-founded fear of future persecution.

Even without a showing of past persecution, however, an asylum applicant can establish that she has a well-founded fear of future persecution if she (1) gives credible testimony showing a genuine subjective fear of persecution, and (2) demonstrates as an objective matter that "a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (citation and internal quotation marks omitted). Here, substantial evidence supports the IJ's finding that Njo lacked a genuine subjective fear of persecution. When Njo was asked what she feared if she returned to Indonesia, she mentioned only "bomb threats." As the IJ noted, however, Njo twice returned from the United States to Indonesia without applying for asylum, during the height of the bombings of Christian churches in Indonesia. On this basis, the IJ found that Njo did not have a well-founded fear of persecution. Voluntary return to a country where the petitioner has allegedly experienced persecution and fears future persecution may undermine the credibility of the petitioner's claimed fear. See, e.g., Jean v. Gonzales, 461 F.3d 87, 91 (1st Cir. 2006) ("[Jean's] willingness to return voluntarily to Haiti on multiple occasions undermines the contention that Jean experienced persecution and has a well-founded fear of persecution

6

there."). Here, the record does not compel us to overturn the IJ's finding that Njo did not evidence a genuine subjective fear of future persecution.

Nor does the record contain facts that would compel a reasonable fact-finder to find that Njo had an objective basis for fearing future persecution in Indonesia. An applicant for asylum can satisfy the objective prong either by showing that she would be individually singled out for persecution or by demonstrating a "pattern or practice" of persecution against persons similarly situated to her in her home country. Lie, 396 F.3d at 536. There is almost no evidence in this record that would suggest Njo faces an individualized threat of persecution in Indonesia. Moreover, the Country Report and news articles in the record do not compel the conclusion that there is a pattern or practice of persecution of ethnic Chinese and/or Christians in Indonesia. Cf. id. at 537. Therefore, Njo has not shown an objective basis for her asserted fear of future persecution in Indonesia, and her asylum claim fails for this reason as well.

To qualify for withholding of removal, an alien must show that her life or freedom would be threatened on account of a protected ground if she were removed. 8 C.F.R. § 1208.16(b). Here, Njo's failure to demonstrate her eligibility for asylum necessarily implies that she has not met the higher standard for withholding of removal. Kibinda, 477 F.3d at 123.

As to Njo's claim for CAT protection, we consider that issue waived due to Njo's failure to make any substantive argument regarding that claim. Lie, 396 F.3d at 532 n.1. Even if Njo had not waived the issue, she has fallen far short of demonstrating that she is

7

likely to be tortured by, or with the acquiescence of, government officials if removed to Indonesia. See 8 C.F.R. §§ 1208.16(c), 1208.18(a).

Finally, because we have fully reviewed the IJ's decision on the merits and there is nothing in the record to suggest that the BIA's decision to conduct a "streamlined" review of Njo's appeal was arbitrary or capricious, we reject Njo's challenge to the BIA's use of the summary affirmance procedure in her case. See Smriko v. Ashcroft, 387 F.3d 279, 296 & n.11 (3d Cir. 2004) (when it is "readily apparent that the decision [to streamline review] is not arbitrary or capricious" then "the reviewing court may simply choose to address the merits of the IJ's decision without resolving the procedural challenge").[2]

Based on the foregoing reasons, we affirm the denial of Njo's application for asylum, withholding of removal, and protection under CAT. Accordingly, the petition for review will be denied.

_____

[2]BIA regulations permit affirmance without opinion by a single member of the BIA when the member determines that (1) the decision below was correct; (2) any errors were harmless or nonmaterial; and (3) either precedent squarely controls the case's outcome, or the factual and legal issues raised in the appeal do not merit issuance of a written opinion. 8 C.F.R. § 1003.1(e)(4)(i).