

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-2007

# Wang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2221

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Wang v. Atty Gen USA" (2007). *2007 Decisions.* Paper 91.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/91

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2221

———

CUI PING WANG,
<u>Petitioner</u>

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
<u>Respondent</u>

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A96-214-598)
Immigration Judge:  Hon. Daniel A. Meisner

———

Submitted Under Third Circuit LAR 34.1(a)
December 10, 2007

Before:  SLOVITER, AMBRO, <u>Circuit Judges</u>, and RESTANI[*], <u>Judge</u>

(Filed: December 12, 2007 )

———

<u>OPINION</u>

———

[*] Hon. Jane A. Restani, Chief Judge, United States Court of
International Trade, sitting by designation.

SLOVITER, Circuit Judge.

Cui Ping Wang ("Wang") petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the denial by the Immigration Judge ("IJ") of her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

**I.**

Wang, who was born in 1986 in the Fujian Province, People's Republic of China, entered the United States on June 5, 2003, with a false passport. She told the airport Department of Homeland Security ("DHS") officer who interviewed her (in Mandarin) that her parents arranged for her trip, which would cost them $60,000, and that her parents wanted her to come to the United States "to earn money."

At the merits hearing on Wang's application, held on October 5, 2004, Wang testified in Mandarin, with the aid of a translator, that she had left China because her parents had violated the family planning policy by giving birth to three children, and by waiting only two years, rather than the required four years, before giving birth to their second child. She testified that her parents were fined 20,000 RMB[1] by village officials in January 1992, shortly after her father was forcibly sterilized, but that they were too poor to pay. She also testified that the village cadre came by the house numerous times to

---

[1] "RMB" is the symbol for the Chinese currency, renminbi, and 20,000 RMB equals approximately $2,000.

have her parents pay the fine, and that she and her sister were taken briefly to a police station in 1993 when her parents were not home, to pressure her parents to pay. Further, her mother was detained a second time in May 2002, although the IJ referenced an overseas investigation that questioned the validity of the certificate of detention allegedly issued by the Public Security Bureau. When the IJ asked Wang why her parents did not pay the fine while they spent "several $10,000" to send her to the United States, Wang answered that her parents "feel those fines are unjust fines."

In his oral decision, the IJ noted that, but for her young age, "I might very well find that the application here is frivolous." App. at 37. The IJ found no evidence that the authorities had prevented Wang from going to school in China despite her parents still owing the fine. The IJ further stated that children of those who resist coercive population control policies are not deemed to have been persecuted on account of political opinion. The IJ also rejected Wang's claim that she feared persecution because she left China illegally, referencing the State Department's profile of China for June 2004 which indicated that returnees are detained only for the time needed to arrange their travel home, fines are rare, and there have been no reported cases of abuse. Finally, the IJ found that Wang's airport statement given to the DHS officer was reliable and supported his conclusion that Wang had failed to prove past persecution in China or a reasonable well-founded fear of future persecution sufficient to qualify her for asylum or related relief.

The BIA affirmed the IJ's decision, without opinion. Wang timely petitioned this

3

court for review.

## II.

We need not discuss the applicable law regarding the proof needed to establish eligibility for asylum, as the parties are well aware of it. Suffice it to note that we have held that "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). Wang is not "a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program," and hence cannot be "deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42)(B). Nor did she provide any evidence that she "has a well-founded fear that [s]he will be subject to such procedures or will be subject to persecution for resisting such procedures . . . ." Wang v. Gonzales, 405 F.3d 134, 139 (3d Cir. 2005) (citing 8 U.S.C. § 1101(a)(42)(B)).

In this case, substantial evidence supports the IJ's decision to deny asylum. No reasonable adjudicator would be "compelled to conclude" that the IJ's determination was incorrect. See 8 U.S.C. § 1252(b)(4)(B).

Wang contends that the fine imposed on her parents and the economic privation it caused, the continuous visits of the village cadre, her own detainment in 1993, and her mother's detention that same year as well as in 2002, constitute substantial evidence of

4

past persecution. We have rejected the argument that a child whose parents have been subjected to the Chinese family planning policies can be deemed to have been persecuted, Wang, 405 F.3d at 143, and Wang produced no contrary evidence. She was not fined and "had no trouble registering for school and attending school in [China]." A.R. at 40; see Wang, 405 F.3d at 143. The economic deprivation she alleged her family to have suffered as a consequence of the approximately $2,000 fine does not amount to persecution because it was not so severe as to "threaten[ Wang's] life or freedom," id., where Wang's testimony indicated that her parents were willing and/or able to spend "several $10,000" for her to come to the United States.

Although Wang testified she was taken out of her home by the village cadre in January 1993 and held until her mother appeared,[2] there is no evidence Wang was ever again detained after 1993, and the very brief period of detention without any evidence of mistreatment does not rise to the level of persecution. See Kibinda v. Att'y Gen., 477 F.3d 113, 119 (3d Cir. 2007) (five-day detention resulting in minor injury requiring only a few stitches does not amount to persecution); see also Fatin, 12 F.3d at 1240 (persecution

---

[2] The IJ noted that he was uncertain whether this constituted an arrest. It should also be noted that it appears, based on the record before this court, that the IJ may have confused the amount of time Wang was detained. Although the IJ notes that Wang and her sister were held until their mother returned "[a]bout 10 days or two weeks later," A.R. at 39, Wang's application and testimony indicate that her mother came "immediately" upon learning her daughters were taken by the village authorities, and it was her mother who was then held by the authorities for fifteen days.

5

includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom").

Although our decisions have cautioned against over-reliance on an airport statement, "especially when the IJ . . . lack[s] important information as to the manner in which the interview was conducted," He Chun Chen v. Ashcroft, 376 F.3d 215, 223-24 (3d Cir. 2004), here, the IJ found the airport statement to be reliable because it was clearly recorded through a Mandarin language interpreter, it lacked any indication that Wang did not understand the questions, and many of the biographical answers coincided with her application information. The record does not compel us to reach a contrary conclusion.

The IJ rejected Wang's claim that she has a well-founded fear of future persecution based on both her parents' resistence to China's population control policies and on her illegal departure. The IJ found that Wang had presented no evidence that her fear, even if assumed to be credible, was reasonable. Wang conceded that she had not had problems since 1993; the mere threat of the fine or the visits of the village cadre, or even possible detention, is insufficiently imminent and menacing to constitute past persecution or to create a fear of future persecution. See Li v. Att'y Gen., 400 F.3d 157, 164-65 & n.3 (3d Cir. 2005) ("[U]nfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution.").

As to the second basis for her alleged fear, although there is some evidence that Chinese individuals who illegally departed may be subjected to administrative detention

6

or, in rare cases, fines upon their return, there is not sufficient evidence that Wang would be in that position if returned to China. "[P]otential prosecution for violating [China's] illegal departure law on its face does not give rise to a fear of persecution . . . ." Si v. Slattery, 864 F. Supp. 397, 406 (S.D.N.Y. 1994) (cited in Chang v. I.N.S., 119 F.3d 1055, 1063 (3d Cir. 1997)); see also Li v. I.N.S., 92 F.3d 985, 988 (9th Cir. 1996) ("Criminal prosecution for illegal departure is generally not considered to be persecution."). There is nothing in this record to suggest that Wang will be prosecuted for her illegal departure while other violators will not.

Because we have concluded that Wang has not established a claim for asylum, we need not separately analyze whether she is entitled to withholding of removal. See Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003). Moreover, we reject Wang's claims under the CAT, as we agree with the IJ that "[t]he record is . . . void of information which would indicate that it is more likely than not that the government of China would torture [Wang] upon return to her country." A.R. at 45.

**III.**

Because the IJ's decision not to grant Wang asylum, withholding of removal, or CAT protection is supported by substantial evidence, we will deny the petition for review.

_____