OPINION
PER CURIAM.
Petitioner, Tatiana Charadze, is a sixty-two-year-old native and citizen of Russia who came to the United States in 1996 as a non-immigrant visitor authorized to stay in the United States until January 1997. Although she had applied for asylum and withholding of removal in 1997, the Service did not act on her application until she filed a second one in July 2005.[1] Charadze was placed in removal proceedings for overstaying her visa in January 2006. Through counsel, Charadze conceded re-movability, renewed her request for asylum and withholding of removal, and applied for relief under the Convention Against Torture (“CAT”).
Charadze claims that she was persecuted in Russia for her religious beliefs as a Baptist. At her removal hearing, Char-adze testified that she became a Baptist when her daughter, Irina, was diagnosed with cancer. (A.R. at 84.) On the day that Charadze was baptized in 1980, individuals, whom she referred to as “skinheads,” attacked the Baptist gathering with chains and sticks. (Id. at 65-66.) She suffered a concussion but did not seek treatment, and no one called the police. (Id. at 66-67.) Other incidents perpetrated by “skinheads” or other individuals against her and other Baptists occurred in 1985 (they broke up a Baptist meeting from which Charadze escaped without injury) and 1989 (vandalized her home, leaving written messages against Baptists and threats of harm if she complained to the police). (Id. at 68, 72, 127.) In 1995, two men dragged Charadze’s two-year-old granddaughter by the hair, causing the child to fall and hit her head. (A.R. at 71.) Charadze believed the men were Russian nationalists because they sported armbands. (Id. at 72.) She did not call the police because she felt that it would be useless to do so. (Id.) Charadze moved to another location in Russia, however. (Id. at 76.)
Charadze also testified to two incidents, arguably involving the police on both occasions. In 1982, the police broke up a Baptist meeting attended by Charadze. (Id. at 67-68.) She was not injured or apprehended. (Id. at 67.) In 1992 (around the time that the Soviet Union fell and Russia became an independent country), four men in plainclothes apprehended Charadze on the street, took her to a building that she later learned was a police precinct, placed her in a cell, covered her *379 head with a plastic bag, and beat her with sticks, to get her to deny her Baptist faith. (A.R. at 69-70.) She was held there for three days and then released. (Id. at 70.)
The incident that prompted Charadze to leave the country occurred in May 1996. While Charadze was waiting at a bus stop after work, two men knocked her unconscious and took her to a building, where they beat her severely, yelling “we will baptize you.” (A.R. at 73.) Charadze took the men’s words to mean “we will crucify you.” {Id.) She was rescued by a man who heard her crying for help. {Id.)
Charadze reapplied for asylum and other relief in 2005, when she learned from her daughter, Irina, that Charadze’s husband, who had become a Baptist in 1990 and was living in Russia, was killed. He was beaten by a group of people as he preached in public. (A.R. at 80-81.) The police took him to a hospital where he later died. (Id. at 81.) Irina tried to file a formal complaint with the police, but they refused to open an investigation, blaming Charadze’s husband for his own demise. (Id.) Charadze said that she feared returning to Russia and believed she will be harmed because she is a Baptist. She feared for her two daughters who remain in Russia, even though they are not Baptists. She offered letters confirming that she is a practicing Baptist in the United States, and she submitted her husband’s death certificate. Charadze testified that she was in constant telephone contact with her children and had spoken to her daughter Irina a day before the hearing. {Id. at 74-75.) When asked why she did not provide medical records for her husband or other corroborating evidence from her daughters and other relatives, Charadze said that documentation of her baptism was destroyed when her home was vandalized, (A.R. at 72 & 102), and that nobody told her that she needed to provide corroborating evidence.[2] (Id. at 85-86, 90-91, 93, 94; & 101-105.)
The IJ denied asylum, withholding of removal and CAT relief, granted voluntary departure, and entered an alternate order of removal to Russia. The IJ found that Charadze provided no corroborating evidence to support her claims. Specifically, he determined that, although there was evidence corroborating Charadze’s testimony that she is a practicing Baptist in the United States, the evidence did not address whether she was a Baptist while she was still living in Russia. Moreover, despite the fact that Charadze was in phone contact with Irina before the hearing, Irina did not write a letter or submit an affidavit confirming the essential details of her mother’s story. The IJ noted that counsel did not request a conference call with Irina at the hearing, which the IJ would have been willing to allow.
The IJ also found that the death certificate did not prove or disprove Charadze’s testimony that her husband was murdered. Charadze provided no medical records from the hospital where her husband died to establish the cause of death. The IJ noted that Irina (who works in a legal office in Russia) could have found out how to obtain such records and, most important, she could have corroborated that the police actively refused to investigate. The IJ concluded that Charadze’s uncorroborated testimony, especially concerning the circumstances of her husband’s death, was implausible, and thus she failed to meet *380 her burden of showing past persecution or a well-founded fear of future persecution for asylum purposes. Because she could not meet the asylum standard, the IJ found that Charadze failed to prove her eligibility under the stricter standards for withholding of removal and for CAT relief. The Board of Immigration Appeals (“BIA”) affirmed, without opinion, the results of the IJ’s decision and dismissed Charadze’s appeal. The BIA allowed her to voluntarily depart within forty-five days of its order. This timely petition for review followed.
We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a). Where the BIA summarily affirms and adopts the IJ’s decision, this Court has jurisdiction to review the IJ’s opinion. Dia v. Ashcroft, 353 F.3d 228, 242-43 (3d Cir.2003) (BIA need not independently set forth basis for its decision where, by summarily affirming the IJ’s decision, it “presents for our review the reasoning and decision of the IJ as that of the Attorney General”). We must uphold the agency’s findings, including its determination whether an alien was subject to persecution or has a well-founded fear of persecution, if they are “supported by reasonable, substantial, and probative evidence on the record considered as a whole.” INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (quotation omitted). Indeed, we may not reject these findings “unless any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B); see also Kibinda v. Attorney General, 477 F.3d 113, 119 (3d Cir.2007).
Charadze protests that the IJ erred in finding that she provided no corroborating evidence for key aspects of her case and that she failed to adequately explain its absence. A denial of relief may be grounded on a failure to corroborate when “(1) the IJ identifies facts for which it is reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain that failure.”[3] Chukwu v. Attorney General, 484 F.3d 185, 191-92 (3d Cir.2007) (citing Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir.2001)).
Here, the IJ faulted Charadze for failing to present documentary or other corroborating evidence that: (1) she was a practicing Baptist in Russia; (2) she was the victim of harassment and beatings as a practicing Baptist in Russia; (3) her husband was murdered for proselytizing the Baptist faith in public in Russia; and (4) the police refused to investigate her husband’s death. We agree with the IJ that Charadze could have obtained letters from family members regarding her Baptist faith and her experiences as a Baptist in Russia. She could have obtained medical records to confirm that her husband died in the hospital and to establish a cause of death. Furthermore, her daughter Irina was reasonably available to provide documentary evidence regarding the circumstances of the death of her father in 2005, and to the refusal of the police department to pursue the case. We agree with the IJ that Charadze failed to adequately explain why she could not obtain this corroborating evidence. Thus, we find nothing in this record that would compel us to conclude that the IJ erred in ruling that Char-adze failed to provide reasonably available corroborating evidence.
*381 Charadze asserts that the IJ rendered an adverse credibility determination as part of his finding that Charadze failed to provide corroborating evidence. We disagree. Because corroboration goes to the sufficiency of the evidence, it requires analysis independent of an adverse credibility determination. See Chen v. Gonzales, 434 F.3d 212, 221 (3d Cir.2005). Even a credible applicant may be required to supply corroborating evidence to meet her burden of proof. Id. at 218. Because the IJ could not conclude that Charadze’s testimony was plausible in the absence of reasonably available corroborating evidence, he found that she failed to meet her burden of proving eligibility for asylum.
Based on the current record, we conclude that substantial evidence supports the IJ’s determination that Charadze failed to meet her burdens of proof as to asylum, withholding of removal, and relief under the CAT. Accordingly, we will deny the petition for review.

. The IJ ultimately found that Charadze's asylum application, filed in 2005, was not time barred, based on Charadze's presentation of a legitimate certified receipt dated in April 1997, which was addressed to the INS.

. In her brief, Charadze blames prior immigration counsel for failing to advise her to obtain additional documentation. (Pet. Br. at 25.) The Government argues that to the extent that Charadze raises a new ineffectiveness of counsel claim, we lack jurisdiction to review it because it is not exhausted. See 8 U.S.C. § 1252(d)(1). We agree. The record indicates that the BIA had no notice of an ineffectiveness of counsel claim.

. Noting that there is no evidence that Char-adze’s earlier asylum application was actually filed in 1997, the Government asserts that the REAL ID ACT’s corroboration standard applies in Charadze's case because she filed her asylum application in 2005, after the Act's effective date. The REAL ID Act merely codified existing law regarding corroboration. See Chukwu v. Attorney General, 484 F.3d 185, 192 (3d Cir.2007).