**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3001
_____

SEKOU OUMAROU KOITA,
                                                          Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                          Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A096-207-074
Immigration Judge: Charles Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 28, 2010
Before: BARRY, STAPLETON and NYGAARD, Circuit Judges

(Opinion filed: April 29, 2010)
_____

OPINION
_____

PER CURIAM

        Petitioner Sekou Oumarou Koita, a native and citizen of Mali, entered the United

States in 2000 without being admitted or paroled.  (He used a fraudulent passport.)  On

November 21, 2003, the Department of Homeland Security ("DHS") issued a Notice to

Appear ("NTA"), charging that he was removable pursuant to Immigration & Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. The allegations were conceded. On January 16, 2004, Koita, through counsel, filed an application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, in which he claimed that he was persecuted in Mali on the basis of his political opinion. Koita later withdrew his asylum application because it was untimely.

During the merits hearing held on February 14, 2008, Koita testified that he was a Secretary of the Association of Pupils and Students of Mali ("AEEM"), a student organization at the Faculté des Sciences Juridiques et Economiques (part of the University of Bamako), a public university. Koita attended the university for about five months from November, 1999 to March, 2000, and he hoped to become a lawyer. As one of five Secretaries in AEEM, Koita served as a liaison between the students and organization leaders. During the relevant time period, January, 2000, through March, 2000, AEEM complained to the government that teachers were not being paid and students were not receiving stipends for books and supplies. The government was unresponsive and AEEM called for a strike. Shortly after the strike began in March, 2000, Koita fled to Niger and eventually came to the United States.

Koita testified that he learned from letters that five AEEM members were arrested

2

during the strike. Since the strike, police have continued to search for him. He has monthly contact with his mother, who remains in Mali, and she has told him that, as recently as 2007, the police came to her home looking for him. As a result of the government's continued pursuit of him for his involvement in AEEM, an organization the government believes is trying to destroy the country, he fears that he will be put in jail and killed if he returns to Mali. On cross-examination, Koita admitted that he was never injured or arrested before or during the 2000 strike. He told the IJ that he did not timely file for asylum when he first came to the United States because he hoped that conditions in Mali would improve.

Koita presented numerous exhibits in support of his case, including, in pertinent part, the 2002, 2003, 2005 and 2006 U.S. State Department Country Reports on Human Rights Practices in Mali; the 1995 State Department's Profile of Asylum Claims and Country Conditions in Mali; an item entitled "VERBAL LAWSUIT," which appears to be committee minutes from a meeting of the student association from March 2, 2000, A.R. 283-84; a letter from Modibo Kane Fofana, General Secretary of AEEM, dated March 10, 2004, A.R. 275-76; a letter from the General Secretary of AEEM, dated February 7, 2005 and addressed to Koita, A.R. 279-80; a certificate of Koita's attendance at the University, A.R. 287-88; the 2003 State Department's Background Note on Mali, A.R. 344-53; and a letter addressed to Koita from the Secretary General of the Coordination Committee of AEEM, Cheick Mohamed Bady, dated July 20, 2007,

indicating that there was still a search for certain unidentified students going on in Mali and advising Koita to stay in exile, A.R. 269-70.

The Immigration Judge denied all relief, concluding that Koita had not testified credibly, and, in the alternative, that he failed to meet his burden of proof for entitlement to withholding of removal under the statute or the CAT. Specifically, the IJ found that Koita did not suffer past persecution; therefore, he was not entitled to a presumption of future persecution. In addition, he failed to meet his burden of proof to establish that he faced a "clear probability" of future persecution on account of his political opinion. The IJ found that there was no evidence that would establish objectively that there was a risk to any exiled students who had previously participated in the 2000 strike. Koita's exhibits, including the 2006 Country Report, while referencing difficulties between students and the government, did not support his contention concerning the plight of students who had been in exile since 2000.[1]

Furthermore, the IJ concluded that Koita failed to prove that he would be singled out for persecution upon his return to Mali. Noting that a great deal of time had passed since the 2000 demonstration/strike, the IJ faulted Koita for failing to present independent

---

[1] The IJ specifically discussed the 2006 Country Report, which states, under the "Freedom of Assembly" section, that, on November 13, 2006, police fired tear gas into a demonstration of medical students who were seeking higher stipends from the government. Five students, including a woman, were arrested, charged with damaging property, and held for six days before being released. The students' union claimed that the five were physically and sexually abused while in police custody. A.R. 227.

evidence from his mother, for example, that would support his assertion that he specifically was the target of a continuing investigation, especially since he talked to his mother on a monthly basis. The IJ also concluded that Koita had not shown that it was more likely than not he would be tortured in Mali. The IJ ordered Koita removed to Mali. Koita appealed to the Board of Immigration Appeals.

In a decision dated June 23, 2009, the Board assumed without deciding that Koita had testified credibly, but the Board agreed with the IJ that Koita simply had not met his burden of proof even assuming that he testified credibly. The Board agreed with the IJ, for the reasons given by the IJ, that Koita had not established past persecution or a clear probability of future persecution. As to the probability of future persecution in particular, the Board specifically held that, because Koita claimed that his mother told him that authorities continued to look for him in Mali, it was reasonable to expect him to provide an affidavit or letter from her, or other persuasive, first-hand evidence, to substantiate this claim. Without the letter from his mother, his claim that Mali authorities continued to look specifically for him over nine years after his departure was otherwise based only on "oral hearsay." A.R. 3-4. The Board agreed with the IJ's CAT conclusion as well. Koita timely petitioned for review of the Board's decision.

We will deny the petition for review. We have jurisdiction to review the final order of removal under 8 U.S.C. § 1252(a)(1), (b)(1). Where the Board adopts and affirms the opinion of the IJ, we review the IJ's decision to the extent of the adoption and

5

affirmance.  See Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001).  The agency's factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole.  Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992).  Under this deferential standard, the petitioner must establish that the evidence does not just support a contrary conclusion but compels it.  See id. at 481 n.1; Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).  The alien bears the burden of proof of establishing that he is a refugee and that he has suffered past persecution or has a well-founded fear of persecution.  See id.; 8 C.F.R. § 1208.13(a).

Under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), withholding of removal is not discretionary: "The Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion."  The test for relief is, however, more exacting than the asylum test because it requires the alien to show by a "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal.  Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984).  See also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) ("would be threatened" standard has no subjective component).  Persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they

constitute a threat to life or freedom." Kibinda v. Att'y Gen. of U.S., 477 F.3d 113, 119 (3d Cir. 2007) (quoting Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993)). It refers only to "severe" conduct and "does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional." Id.

Koita has waived the issue of whether he suffered past persecution. See Petitioner's Brief, at 15 n.4.[2] The record in any event does not compel a finding of past persecution because Koita was never arrested or harmed on account of his affiliation with the student organization, AEEM. He has not identified a single event that caused him extreme harm or suffering sufficient to meet the standard of persecution. See Kibinda, 477 F.3d at 119; Fatin, 12 F.3d at 1240. Because he failed to establish past persecution, he was not entitled to the future persecution presumption. See 8 C.F.R. § 1208.16(b)(1)(i). With respect to the future persecution issue, the Board's and IJ's determination that Koita did not show a clear probability that the government of Mali would arrest or harm him now on the basis of his political activities in 2000 was supported by reasonable, substantial, and probative evidence on the record considered as a whole. Elias-Zacarias, 502 U.S. at 481.

Koita failed to present any persuasive evidence that the Mali government currently seeks out members of the student group AEEM who played some role in the 2000

---

[2] Koita also waived review of his CAT claim. See id. In view of that waiver, we will not address the CAT issue.

7

strike/demonstration. Because Koita's problems in Mali are so remote in time, it was not sufficient for him to show merely that he was involved with AEEM ten years ago. The record establishes that Koita offered Country Reports, internet articles, and letters, some of which were addressed to him or referenced him, in support of his allegations. The IJ did not ignore Koita's documentary evidence. In his brief, Koita specifically discusses four items. See Petitioner's Brief, at 11-12. The letter from Cheick Mohamed Bady describes trouble at the Faculté des Sciences Juridiques et Economiques at the beginning of 2007 and states that leaders have been imprisoned. It warns exiled students to stay away but it does not persuasively state that government authorities have any interest in arresting students who participated in the 2000 strike/demonstration. A.R. 269.

The March 10, 2004 letter from Secretary General Modibo Kane Fofana states that demonstrators had been gassed and 40 students had been arrested. A.R. 275. This recounting of events appears, however, to refer to recent difficulties and not the 2000 strike/demonstration. Furthermore, the letter makes no persuasive reference to government authorities having any current interest in students who participated in the 2000 strike/demonstration. The February 7, 2005 letter from an unidentified AEEM General Secretary states that the crisis started up again in 2004-2005. The author "lost" three of his friends and even "actual leaders" were on a "black list." A.R. 279. The author warns exiled students to stay away, but, again, the letter makes no persuasive reference to government authorities having any current interest in students who

8

participated in the 2000 strike/demonstration. Last, the March 2, 2000 minutes ("Verbal Lawsuit") from a student meeting held at the University states that the situation is tense and certain "comrades" were in prison, but the letter states that Koita himself was known to have gotten out of Mali. A.R. 283. These minutes do not address current conditions in Mali.[3]

The IJ properly gave little weight to Koita's documentary evidence and properly concluded that it was inadequate to support an assertion that the government of Mali is currently interested in detaining and harming AEEM members who participated in the 2000 strike/demonstration. In light of the insufficient evidence, the IJ and the Board properly focused on the only thing that specifically supported Koita's purported fear of harm: that his mother has told him that authorities continued to look for him in Mali. But Koita did not provide an affidavit or letter from his mother, or other persuasive evidence to substantiate this assertion, and his failure to present any documentation from his mother was not reasonable because he testified that he talks to her on a monthly basis.

Koita contends in his brief that the Board erred in denying his claim based on the absence of corroborative evidence from his mother. See Petitioner's Brief, at 9-10. We

---

[3] One other internet article specifically included in Koita's appendix, entitled "Mali: Institutional Situation," which appears to have been authored by a person or persons connected with Montesquieu Univerity-Bordeaux, France, states that AEEM is "the most antiestablishment of the Malian union movements. Its actions laid down the foundations of the 'revolution' that overthrew the dictatorship [of General Moussa Traoré in 1991]. Recent action comprised the academic year 1998-99." A.R. 297. This article does not even reference the 2000 strike/demonstration.

have held that corroboration may be required, even from credible applicants, see Abdulai, 239 F.3d at 554, where it is (1) reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain that failure. Chukwu v. Att'y Gen. of U.S., 484 F.3d 185, 191-92 (3d Cir. 2007) (citing Toure v. Att'y Gen. of U.S., 43 F.3d 310, 323 (3d Cir. 2006). The IJ and the Board in Koita's case fully complied with this test. The Board, for example, concluded that it was reasonable to expect corroboration because Koita's assertions otherwise were based on hearsay and were not persuasive. Moreover, Koita claimed that his mother had personal knowledge of the Mali authorities' continued interest in him nine years after the 2000 strike, and he testified that he talked to his mother as recently as January, 2008. When questioned, he had no reasonable explanation for his failure to request a letter from his mother corroborating his claims. A.R. 190-193.

Last, Koita contends that the Board acted improperly in not reaching the issue of his credibility. This argument lacks merit because the Board, indeed any court or agency, is not required to decide an issue that is not necessary to the result it reaches. See Immigration & Naturalization Serv. v. Bagamasbad, 429 U.S. 24, 25 (1976). In light of the substantial evidence that supported the Board's determination that Koita's fear of future persecution was not clearly probable, the Board was not required to address his credibility.

For the foregoing reasons, we will deny the petition for review