**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 23-1557

—————

HUGO ALBERTO LOPEZ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA

—————

On Petition for Review of a Final Order
Of the Board of Immigration Appeals
(BIA No.:  A205-009-795)
Immigration Judge: Alice Song Hartye

—————

Submitted under Third Circuit L.A.R.
on January 19, 2024

Before:  JORDAN, BIBAS, and AMBRO, <u>Circuit Judges</u>

(Opinion Filed: February 15, 2024)

—————

OPINION*

—————

—————

\*      This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

**AMBRO**, <u>Circuit Judge</u>

Hugo Lopez was born in Mexico and brought to the United States at age two, but he never became a U.S. citizen. Following his drug-related arrest as an adult, followed by his plea and sentence, the Department of Homeland Security issued an administrative order of removal. Lopez applied for withholding of removal under the Immigration and Nationality Act (INA) and protection under the United States Convention against Torture, both of which the Immigration Judge (IJ) denied. [1] Lopez appealed the IJ's denial of withholding of removal to the Board of Immigration Appeals (BIA), which dismissed his appeal. Lopez petitions us for review of the withholding of removal of decision. He bases that petition on two grounds. The first is the fear of future persecution in Mexico for being gay and in a same-sex marriage. The second ground is that, after his arrest, the police asked Lopez to be a confidential informant. Though he refused, his cousin Giovani Figuerro—a local drug-trafficker—believed Lopez did cooperate. As a result, Figuerro fled the country to Mexico, from where he sent Lopez numerous Snapchat messages threatening his life.

In this context, Lopez claimed membership in two particular social groups (PSG) of "gay men" and "perceived criminal informants." The IJ denied his application for withholding, finding that while he subjectively feared persecution as a gay man in Mexico, the evidence he presented did not support an objective fear of persecution. Also,

---

[1] The IJ found Lopez's conviction to fall under the exceptions set forth in *Matter of Y-L-, A-G-R-, & R-S-R-*, 23 I&N Dec. 270, 276-77 (A.G. 2002). As a result, it does not bar withholding.

his cousin's threats against him were based on a personal vendetta, not membership in a PSG of "perceived criminal informants." She thus entered a removal order.

On appeal to the BIA, it agreed with the IJ's conclusion that "perceived criminal informants" is not a cognizable PSG because it lacks particularity and social distinction. It also accepted the IJ's finding that the Mexican government would be neither unwilling nor unable to protect Lopez from persecution by private individuals on account of his membership in the PSG of "gay men."

Before us, Lopez makes several arguments for why we should grant his petition for review and either grant him withholding-of-removal relief or remand to the BIA and IJ with instructions on how to correct their errors. He does not persuade us, however, that they committed any.

Lopez first argues that the BIA and IJ erred in finding that he had not adequately demonstrated a well-founded fear of persecution. A petitioner must be granted withholding of removal under 8 U.S.C. § 1231(b)(3) if he can demonstrate a "clear probability" of persecution based on a protected ground if he returns to his country of origin. *I.N.S. v. Stevic*, 467 U.S. 407, 413 (1984). Such a claim is subject to a two-pronged test requiring an applicant to demonstrate both a subjective fear of persecution and "that [his] apprehension [is] objectively reasonable in light of the circumstances of [his] case." *Huang v. Att'y Gen.*, 620 F.3d 372, 381 (3d Cir. 2010). While the IJ found that Lopez satisfied the subjective prong of this test, she concluded he failed to meet the objective prong. Lopez responds that, in finding he failed to demonstrate that the

3

Mexican government was neither unwilling nor unable to protect LBGTI[2] individuals from violence, the IJ "cherry-picked" positive data about the treatment of those individuals in Mexico from a Department of State Country Report for 2017, and that both she and the BIA "failed to grapple with" negative information in it. Lopez's Br. at 15. To demonstrate this, Lopez lists several incidents of anti-gay violence described in the Report. *Id.*

The mere existence in a country of violence against a group does not, however, establish a well-founded fear of persecution. Instead, an applicant must demonstrate "potential harm rising to the level of persecution on account of a statutorily enumerated ground that is committed by the government or by forces the government is unable or unwilling to control." *Kibinda v. Att'y Gen.*, 477 F.3d 113, 119 (3d Cir. 2007). The IJ and BIA considered all record evidence and found it demonstrated that the Mexican government was willing and able to protect individuals similarly situated to Lopez: its laws prohibit discrimination based on sexual orientation and accept same-sex marriages, plus its government has demonstrated increased efforts to promote the acceptance and tolerance of gay individuals. Lopez has failed to demonstrate that no reasonable factfinder could have come to this conclusion; therefore, we do not disturb it.

Lopez next argues that the BIA and IJ erred by relying "heavily" on *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018), which was vacated in 2021, when determining that "perceived criminal informants" did not meet the definition of a PSG as required under

---

[2] This is the broader term used by the IJ; it stands for lesbian, bisexual, gay, transsexual, and intersex individuals.

U.S. asylum law. Lopez's Br. at 17. But *A-B-* was not essential to their decisions, and they are both on firm ground without it. To qualify for asylum based on membership in a PSG, Lopez must show he is a member of a "particular social group" that shares a common, immutable characteristic, and that he would be persecuted, or has a well-founded fear of persecution, based on that membership. *See Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993). As clarified in the case he urges us to follow—*Matter of M-E-V-G-*, 26 I&N Dec. 227 (BIA 2014)—a PSG must also be "defined with particularity" and "socially distinct within the society in question." *Id.* at 237.

Arguing that the BIA and IJ erred in finding that the term "perceived criminal informants" satisfies neither criterion, Lopez claims his proposed PSG is comparable to the one proposed in *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171 (3d Cir. 2020), where we held that the applicant had properly defined a PSG. *Guzman* is distinguishable for a clear reason: the PSG in that case —"a group consisting of witnesses who have publicly provided assistance to law enforcement against major Salvadoran gangs"—was far more specific than the group Lopez proposes. *Id.* at 180. Indeed, the BIA specifically explained that though he claimed his group was limited to "persons with a public reputation for cooperation," his proposed term did not limit the group to those with a public reputation. BIA Decision at 2. Even excluding *A-B-*, BIA precedent has consistently required a more specific definition. *See Matter of H-L-S-A-*, 28 I&N Dec. 228, 239 (BIA 2021) ("prosecutorial witnesses" is not a cognizable PSG); *Matter of C-A-*, 23 I&N Dec. 951, 961 (BIA 2006) (neither is the group of "former noncriminal drug informants working against the [ ] drug cartel").

5

Moreover, as the BIA observed, Lopez's proposed group of "perceived criminal informants" does not include a jurisdictional limit, nor did he point to any evidence showing the group was socially distinct within Mexico.

For these reasons, we deny Lopez's petition for review.