**IMG-268**                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4062
_____

GUANG CUN YE,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A094-798-102
Immigration Judge: Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 22, 2010

Before:   FUENTES, VANASKIE and VAN ANTWEPEN, Circuit Judges

(Opinion filed August 5, 2010)
_____

OPINION
_____

PER CURIAM

Guang Cun Ye ("Ye") petitions for review of the Board of Immigration Appeals'

final order of removal.  For the reasons that follow, we will deny the petition for review.

Ye, a native and citizen of China, entered the United States without authorization

or inspection on June 13, 2006.  He was served the next day with a Notice to Appear,

which charged that he was removable pursuant to Immigration & Nationality Act ("INA")

§ 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States

without having been admitted or paroled. Ye submitted an application for asylum under

INA § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8

U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture, 8 C.F.R.

§§ 1208.16(c), 1208.18, claiming a fear of persecution on account of his opposition to

China's population control policies.

In a statement submitted with his asylum application, Ye detailed the bases of his

claim and supported it with a statement from his wife and mother-in-law. After Ye's wife

gave birth to their son, she was made to have an Intra-Uterine Device ("IUD") inserted

and was also required to attend inspections regarding this IUD. In May of 2000, she had

the IUD removed by a private doctor, and in August of 2000 she became pregnant. She

then skipped her scheduled IUD inspections. Local family planning officials began

searching for her, and finally found her at home on October 10, 2000. She was taken to

the hospital and her pregnancy was terminated against her will. Subsequently, another

IUD was inserted. Ye left China with the help of a smuggler in 2006.

Venue in Ye's case eventually was changed to Newark, New Jersey Immigration

Court. Prior to his merits hearing, Ye submitted an additional affidavit to the

Immigration Judge, detailing a second basis for asylum. In this statement, Ye claimed

that he now fears persecution on account of his Christian religion. He was attending

church in the United States and came to realize that the teachings of the church here

2

differed from that of the state-sponsored Christian church in China. If returned to China, he would cease attending the state-sponsored church and join an underground church – an act that would subject him to persecution by the Chinese government. Ye submitted documentary evidence in support of this claim, including the 2008 United States Department of State International Religious Freedom Report for China. He also submitted several articles and two certificates attesting to his regular attendance at the Church of Grace in Manhattan signed by Pastor Matthew Ding and Minister Zeng Ming Lin, A.R. 234, 480.

A merits hearing was held on November 18, 2008. Ye generally testified consistent with his asylum application, and he testified that he and his wife wanted to have more children, A.R. 145. He was born in Fujian, China. On cross-examination, Ye testified that he never personally had any contact with family planning officials. A.R. 151. He has never been harmed and he was not present when his wife was taken away for the abortion. With respect to his fear of religious persecution, Ye testified that he attends the Church of Grace in Manhattan. His pastor and members of his church have told him that the church he attended in China was "fake." A.R. 146. Because the church is fake, "you will not have immortal life or live forever." Id. at 147. Ye continued: "In China, they put love in the first place and in United States they put belief in the first place, and also in China, the church did not say that abortion is not allowed. However, in the United States the Christianity says that a Christian cannot have an abortion because that is some -- that is a gift that is given by God." A.R. 158. Ye testified that, if he worships at an

3

underground church in China, which he intends to do, he will be arrested, and if he is arrested he will be beaten and prosecuted.

The IJ issued his oral decision denying all relief on the same day as the merits hearing. The IJ held that Ye failed to establish eligibility for asylum or withholding of removal on the basis of his wife's forced abortion. He could not show past persecution solely on the basis of what happened to his wife under Matter of J-S-, 24 I. & N. Dec. 520 (A.G. 2008), and he failed to submit any evidence that he was harmed or had otherwise resisted China's population control policies. His claim that he and his wife might have additional children and thereby be subject to persecution was too speculative to support a well-founded fear of future persecution. The IJ further determined that Ye failed to establish his eligibility for asylum or withholding of removal based on his religious beliefs. He did not contend that he suffered past persecution on this ground, and his claim of a well-founded fear of future persecution was vague. The IJ noted that testimony from Ye's Church of Grace pastor about the church's practices – and how those practices differ from Christian churches in China – might have been useful in helping him meet his burden of proof, but Ye did not call his pastor as a witness. Moreover, Ye's documentary materials did not establish that participation in an underground church in China results in persecution if one is detected. The Chinese government's treatment of such churches varied widely and was often permissive rather than oppressive. Regarding protection under the CAT, the IJ determined that Ye failed to establish a clear probability of torture, by or with the acquiescence of the Chinese government, if removed.

Ye appealed to the Board of Immigration Appeals. The Board dismissed the appeal on September 23, 2009, adopting and affirming the decision of the IJ, see Matter of Burbano, 20 I. & N. Dec. 872, 874 (BIA 1994). In pertinent part, the Board held that Ye failed as a matter of law to establish persecution on account of his wife's abortion, see Matter of J-S-, 24 I. & N. Dec. 520, and he did not demonstrate any resistance on his own part to China's population control policies. In addition, the Board agreed with the IJ that Ye could not establish a well-founded fear of persecution on account of these policies, because his assertion that he would have more children and would thereby be persecuted was speculative and dependent on many variables. Regarding his claim of religious persecution, the Board held that Ye failed to establish any past persecution in China on this ground, and he did not proffer sufficient evidence to establish a well-founded fear of persecution on account of his religion if he were removed to China.

Ye now petitions for review of the Board's decision. In his brief, he contends that the Board's determination that he did not establish a well-founded fear of persecution on account of his religion is not supported by substantial evidence; the Board's determination that he did not establish a well-founded fear of persecution on account of his opposition to China's population control policies is not supported by substantial evidence; and he established past persecution on the basis of his wife's forced abortion under traditional principles of asylum law.[1]

---

[1] Ye does not challenge in his brief the agency's denial of his applications for withholding of removal and protection under the CAT, and thus these issues are waived.

5

We will deny the petition for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Where the Board adopts and affirms the findings of the IJ and discusses the bases for the IJ's decision, we have authority to review both decisions. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). See also Hashmi v. Att'y Gen. of U.S., 531 F.3d 256, 259 (3d Cir. 2008). An applicant bears the burden of proving eligibility for asylum. Shardar v. Att'y Gen. of U.S., 503 F.3d 308, 312 (3d Cir. 2007). See also Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001). The Board's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, Ye must establish that the evidence does not just support a contrary conclusion but compels it. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

To establish refugee status and, thus, eligibility for asylum, the applicant must credibly demonstrate past persecution or a well-founded fear of persecution on account of one or more of the statutorily protected grounds. 8 C.F.R. §§ 1208.13(a), (b); Camara v. Att'y Gen. of U.S., 580 F.3d 196, 202 (3d Cir. 2009). Persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Kibinda v. Att'y Gen. of U.S., 477 F.3d 113, 119 (3d Cir. 2007) (quoting Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir.

See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).

6

1993)).  It refers only to "severe" conduct and "does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional."  Id.  In the absence of evidence of past persecution, the applicant must demonstrate a subjective fear of persecution through credible testimony that his fear is genuine, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003), and the applicant must show that a reasonable person in his circumstances would fear persecution if returned to the country in question, see id.

Ye did not claim that he had been persecuted in the past on the basis of his Christian religion.  As to his claim that he has a well-founded fear of persecution based on his potential future involvement in an "underground" church, the record does not compel a conclusion contrary to that of the Board's insufficient evidence determination.  According to an article submitted by Ye, his Church of Grace is a Protestant church.  A.R. 192.  The 2008 International Religious Freedom Report indicates that Protestantism is an officially recognized religion in China (as is Catholicism).  A.R. 217.  Nevertheless, Ye appeared to testify that there were doctrinal differences between his Manhattan Church of Grace and the state-supported Christian churches in China with respect to the issue of abortion, and the Chinese government perceives unregulated religious groups as a challenge to its authority.  See id. at 220.

But, even assuming Ye would attend an underground church in China, if removed, he did not submit any objective evidence that would establish a well-founded fear of persecution on this ground.  Although the activities of unregistered or "underground" Protestant groups remain outside the scope of legal protection, they have continued to

7

expand and no longer operate in strict secrecy. See id. at 218. As noted by the IJ, in some regions of China, government supervision of unregistered churches is minimal. See id. at 220. Some unregistered churches have significant membership, properties and financial resources. See id. at 221. In any event, other than his assertions of what he was told by the pastor of the church he attended in New York City, Ye did not present any evidence of such doctrinal differences between the church he had attended in China before his voluntary departure and the church he attended in the United States that would substantiate his assertion that he would be compelled to attend some underground church upon his return to China.

Ye contends in his brief that the testimony of his pastor is not required by Board precedent, see Matter of S-M-J-, 21 I. & N. Dec. 722, 725 (BIA 1997), and that the IJ erred in insisting upon such testimony. This argument, and Ye's further statement that he effectively presented his pastor's testimony by supplying a phone number where the IJ could reach the pastor, see Petitioner's Brief, at 21-22, misses the mark. The applicant bears the burden of proving eligibility for asylum. Shardar, 503 F.3d at 312; Abdille, 242 F.3d at 482. Here, the IJ assessed the sufficiency of Ye's proof and appropriately found it wanting; the lack of witness testimony was only one of several deficiencies in Ye's case. Ye also contends that the IJ did not sufficiently consider that unregistered churches continue to be illegal, see Petitioner's Brief, at 33, but, insofar as the IJ fully considered the 2008 International Religious Freedom Report, which makes that fact plain enough, the illegality of underground churches in China was necessarily considered.

The record also does not compel the conclusion that Ye established either past persecution or a well-founded fear of persecution on account of China's population control policies. See 8 U.S.C. § 1252(b)(4)(B). Regarding past persecution, the abortion Ye's wife was forced to undergo does not establish that Ye is per se eligible for asylum. Lin-Zheng v. Att'y Gen. of U.S., 557 F.3d 147, 155-56 (3d Cir. 2009) (en banc) ("[T]here is no room for us to conclude that Congress intended to extend refugee status to anyone other than the individual who has either been forced to submit to an involuntary abortion or sterilization....."). See also Matter of J-S-, 24 I. & N. Dec. 520.

Both Lin-Zheng and Matter of J-S- foreclose eligibility for asylum in Ye's case solely on the basis of his wife's forced abortion. Thus, he can only establish a basis for asylum if he shows that he suffered past persecution or has a well-founded fear of persecution in China on account of his "other resistance" to the Chinese government's population control policies. Lin-Zheng, 557 F.3d at 157; Matter of J-S-, 24 I. & N. Dec. at 538. The phrase *other resistance* "covers a wide range of circumstances, including expressions of general opposition, attempts to interfere with enforcement of government policy in particular cases, and other overt forms of resistance to the requirements of the family planning law," see Matter of S-L-L-, 24 I. & N. Dec. 1, 10 (BIA 2006). Ye's evidence does not compel the conclusion that he exercised "other resistance" to China's population control policies. 8 U.S.C. § 1252(b)(4)(B). While in China, he was not harmed by the Chinese government; he testified that he had no dealings with the family planning officials. A.R. 151.

9

In addition, substantial evidence supports the Board's determination that Ye failed to demonstrate a well-founded fear of future persecution. Ye has only one child and is not currently in violation of China's one-child policy. His wish to have a second child does not, by itself, constitute objective evidence of a well-founded fear of persecution. Without evidence of his locale's family planning enforcement initiatives, and Ye offered no such evidence, the record does not support a finding, let alone compel the conclusion, that Ye himself would be, for example, subjected to a severe economic sanction or involuntarily sterilized. His wife's abortion alone does not establish that he would be persecuted if he attempted to have additional children, or that he would offer "other resistance" to China's policies upon his return to China. Ye's contention that his wife's abortion makes him eligible for asylum based on "traditional principles of asylum law" is contradicted by our holding in Lin-Zheng, 557 F.3d at 155-56.

For the foregoing reasons, we will deny the petition for review.