**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4726
_____

SHEN SIN-ZI
also known as
SIN-ZI SHEN

Shen Sin-Zi,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A098-592-345)
Immigration Judge:  Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 16, 2011
Before:  RENDELL, JORDAN and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 17, 2011)
_____

OPINION
_____

PER CURIAM

Sin-Zhi Shen petitions for review of the Board of Immigration Appeals' ("BIA")

1

final order of removal. In its order, the BIA affirmed the Immigration Judge's ("IJ")

decision to deny Shen's application for asylum, withholding of removal, and protection

under the Convention Against Torture ("CAT"). We will deny the petition.

## II.

Shen, a native and citizen of China, entered the United States without inspection in

2005. The Department of Homeland Security issued a Notice to Appear ("NTA"),

charging Shen with removability under INA § 212(a)(6)(A)(i) as an alien present in the

United States without being admitted or paroled. Shen admitted the allegations in the

NTA and conceded removability. In turn, she applied for asylum, withholding of

removal, and protection under the CAT, alleging that she experienced past persecution in

China and feared persecution upon her return to the country because she is a Christian.

At her administrative hearing, Shen testified that she became a Christian in 2002

and that she participated in religious gatherings at the homes of other Christians because

public meetings are illegal. Shen alleged that law enforcement authorities raided a

meeting she attended in June 2004. Although Shen was unclear how those officials

learned about the gathering, Shen claimed that she, and thirty others, were arrested, taken

to the police station, interrogated, and held overnight.

Shen testified that she continued to attend Christian gatherings after her release,

despite having been told not to do so. Shen claimed that she was arrested again in

October 2004 while attending a prayer meeting at a friend's home. She alleged that she

2

was taken to the police station, held for seven days, and warned that her family could be in danger if she continued to attend Christian meetings. She also testified that following that arrest and detention, she was fired from her job and believes that if she is returned to China, she will be subject to "re-education." (Administrative Record ("A.R") at 126.)

A friend of Shen's testified on her behalf at the administrative hearing, claiming that he and Shen have been members of the same Christian church in the United States since 2005. Shen also presented letters from her husband and a friend, who remain in China, corroborating Shen's alleged experiences before she left the country. The IJ also considered the United States Department of States' 2007 Profile of Asylum Claims and Country Conditions.

Following the administrative hearing, the IJ denied Shen's application for asylum and related relief. The IJ found that Shen did not testify credibly regarding the date of her second arrest. The IJ further concluded that the treatment that Shen suffered did not rise to the level of past persecution, and also that Shen also did not have a well-founded fear of future persecution.

In an order dated August 31, 2009, the BIA affirmed. The Board declined to reach the IJ's credibility ruling, determining that even if Shen had testified credibly, the IJ correctly concluded that she had not met her burden of proof to qualify for asylum, withholding of removal or CAT relief. Shen filed a timely petition for review.

II.

This Court has authority to review final orders of removal. See 8 U.S.C. §

1252(a). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review agency factual determinations for substantial evidence, and will uphold such determinations "unless the evidence not only supports a contrary conclusion, but compels it." Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005) (internal citations omitted).

The Attorney General may grant asylum to "any person who is outside any country of such person's nationality . . . and is unwilling to avail . . . herself of the protection of [] that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion ." 8 U.S.C. § 1101(a)(42)(A). To show that a fear of future persecution is well-founded, "an applicant must [first] show that his or her subjective fear is genuine and second that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." Wong v. Att'y Gen., 539 F.3d 225, 232 (3d Cir. 2008) (internal quotations and citations omitted).

We have previously held that persecution "is an extreme concept that does not include every sort of treatment our society regards as offensive." Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007) (quoting Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir. 1993)). "Abusive treatment and harassment, while always deplorable, may not rise to the level of persecution." Id.

The IJ and BIA concluded that Shen's experiences in China, including her alleged

4

arrests and detentions at the hands of law enforcement officials on account of her religious practice, did not amount to past persecution. We agree. While we do not condone the type of mistreatment that Shen described, substantial evidence supports the BIA's conclusion that it was not so extreme as to amount to persecution. See Kibinda v. Att'y Gen., 477 F.3d 113, 119-20 (3d Cir. 2007) (holding that an alien did not meet his burden of showing past persecution where he was detained for five days and injured when he was hit in the face with an heavy object and his injury required stitches). We further agree that the loss of her job failed to demonstrate "economic restrictions so severe that they constitute a threat to life or freedom." Fatin, 12 F.3d at 1240.[1]

Substantial evidence also supports the conclusions of the IJ and BIA that Shen did not establish that her fear of future persecution was objectively reasonable. According to the 2007 Profile, although the Chinese government has been known to represses unauthorized Christian activities, the degree of repression is sporadic and depends on the size, location, and nature of the church. (A.R. at 148.)[2] The Profile further states that unauthorized Christian activity is "sometimes quietly tolerated" and that governmental supervision of such activity in some areas is "minimal." Id. Shen did not produce any evidence suggesting that the area in which she lives is more likely to be targeted.

---

[1] Moreover, we agree with the Government that it is unclear from Shen's testimony whether she lost her job as a result of her Christian faith or because she missed work during the period while she was detained.

[2] We disagree with Shen's assertion that the IJ concluded that "illegal congregations are allowed in China unless they do not become very large." (Pet. Br. at 15.) The IJ

As Shen did not meet her burden of proof on her asylum claim, her claim for withholding of removal necessarily fails.  <u>See</u> <u>Yu v. Att'y Gen.</u>, 513 F.3d 346, 349 (3d Cir. 2008).  We also conclude that the BIA did not err when it concluded that Shen had not established a basis for relief under the CAT, as she did not demonstrate that it is more likely than not that she would be tortured upon her return to China.

Accordingly, we will deny the petition for review.

---

made no such finding, either explicitly or implicitly.