**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-3651

OLGA AGEYEVA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-683-176)
Immigration Judge: Annie S. Gracy

Submitted pursuant to Third Circuit LAR 34.1(a)
September 20, 2010

Before: McKEE, *Chief Judge*, AMBRO and
CHAGARES, *Circuit Judges*

(Opinion filed: April 21, 2011)

OPINION

McKEE, *Chief Judge*.

Olga Ageyeva[1] petitions for review of a final order of removal of the Board of

Immigration Appeals which upheld the decision of an Immigration Judge denying her

applications for asylum, withholding of removal, and relief under Article 3 of the

---

[1]In her brief, she refers to herself as "Ageeva." However, through almost
everywhere in the record, including her asylum application, she is referred to as
"Ageyeva." Therefore, we will refer to her as "Ageyeva."

Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review. [2] This Court's jurisdiction over final orders of removal is generally governed by section 242(a)(1) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1252(a)(1).

## I.

The agency's finding of facts, including adverse credibility findings, are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B); *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). Section 242(b)(4)(B) codified the Supreme Court's highly deferential substantial evidence test set forth in *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). Under the substantial evidence test, if the petitioner "seeks to obtain judicial reversal of the BIA's determination, he must show that the evidence he presented was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution." *Elias-Zacarias*, 502 U.S. at 483-84. We "must uphold the [agency's] findings if there is substantial evidence on the record to support them, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kibinda v. Att'y Gen.*, 477 F.3d 113, 119 (3d Cir. 2007) (citation and internal quotation marks omitted). Under this deferential standard, the agency's "finding must be upheld unless the evidence not only

---

[2]Even though Ageyeva did not file her application until more than one year after her arrival in the United States, the IJ waived the one-year filing deadline, 8 U.S.C. § 1158(a)(2)(B), because Ageyeva suffered from a mental breakdown soon after her arrival in the United States.

2

supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001) (citation omitted).

Where, as here, the BIA issues its own decision on the merits and not simply a summary affirmance of the IJ's decision, we review the BIA's decision as the final agency decision. *Li v. Att'y Gen.*, 400 F.3d 157, 161-62 (3d Cir. 2005).

**II.**

Section 208(b)(1) of the INA, 8 U.S.C. § 1158(b)(1), gives the Attorney General the discretion to grant asylum to any alien who meets the requirements of that section, if the Attorney General determines that the alien is a "refugee" as defined in INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). A "refugee" is an alien who is unable or unwilling to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "In order to establish past or future persecution, an applicant must show past or potential harm rising to the level of persecution on account of a statutorily enumerated ground that is committed by the government or by forces the government is unable or unwilling to control." *Kibinda v. Att'y Gen.*, 477 F.3d 113, 119 (3d Cir. 2007) (citation and internal quotation marks omitted).

If an alien shows that he or she has suffered past persecution in a particular country, a rebuttable presumption arises that the alien has a well-founded fear of future persecution in that country. 8 C.F.R. § 1208.13(b)(1). The presumption can be rebutted

if the government shows, by a preponderance of the evidence, either: (1) that country conditions have changed to the extent that the alien no longer has a well-founded fear of future persecution; or (2) the alien could avoid future persecution by relocating to another part of the country of removal. 8 C.F.R. § 1208.13(b)(1)(i)(A), (B). Absent a showing of past persecution, an alien can establish eligibility for asylum by demonstrating a subjectively genuine and objectively reasonable well-founded fear of future persecution on account of a protected ground. *Lukwago v. Ashcroft*, 329 F.3d 157, 174-75 (3d Cir. 2003).

To qualify for withholding of removal, an alien must show a clear probability (i.e., that it is more likely than not) that, if returned to his or her country, the alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987).

The alien has the burden of proving eligibility for asylum and withholding of removal. 8 U.S.C. § 1158(b)(1)(B)(i); 8 U.S.C. § 1231(b)(3)(C); 8 C.F.R. §§ 1208.13(a), 1208.16(b). Failure to satisfy the lower standard of proof required to establish eligibility for asylum necessarily results in a failure to show eligibility for withholding of removal. *Lukwago*, 329 F.3d at 182.

An applicant may be granted CAT protection if he or she shows that it is more likely than not that he or she would be tortured if removed. 8 C.F.R. § 1208.16(c)(2); *see also* 8 C.F.R. § 1208.18(a) (defining "torture").

4

**III.**

The BIA found Ageyeva not credible because of unexplained discrepancies between her version of events and her supporting documentation. Specifically, the BIA found Ageyeva not credible because Ageyeva's version of events (explained through her affidavit attached to her asylum application and her testimony at the hearing) was inconsistent with three affidavits she submitted in support of her claims.

Ageyeva claimed that she was arrested and detained for three days as a result of her ongoing participation in opposition party political activity, and her arrest, detention and political activity were the basis for her claims for relief. However, the BIA noted significant, unexplained omissions from Ageyeva's supporting affidavits. First, Dolenchuk's affidavit did not mention that Ageyeva was detained for three days, even though Ageyeva claimed that Dolenchuk was aware of the arrest and detention. In addition, Dolenchuk's affidavit did not mention that Ageyeva engaged in any political activities. Second, Ageyeva's daughter's affidavit did not mention that she, Ageyeva or Ageyeva's son were ever arrested or detained. Third, Komarovsky's affidavit did not mention that Ageyeva was ever arrested or detained, although it did mention that the government was looking for her and he believed that she would be arrested if she returned to Turkmenistan.

We agree with the BIA that "these are all significant omissions and discrepancies." The failure of affidavits to mention Ageyeva's arrest, detention and political activity – which were the basis for her claims for relief – provides ample support for the BIA's

5

adverse credibility determination.

Ageyeva was given an opportunity to explain the discrepancies, but failed to do so. During cross-examination, Ageyeva repeatedly testified that Dolenchuk knew about her arrest and three-day detention. When asked about the affidavit's failure to mention the arrest, Ageyeva first attempted to distinguish between an arrest and an interrogation. However, this attempted explanation failed because the affidavit did not mention interrogation either. Ageyeva then testified that no one had asked about her arrest. However, this explanation failed as well because, as DHS notes, Dolenchuk's affidavit was prepared specifically for Ageyeva's asylum application. Thus, there is no reason why the affidavit would not have mentioned Ageyeva's arrest or her political activity, which were the foundation of her asylum application.

With regard to Dolenchuk's affidavit not mentioning that Ageyeva engaged in any political activity, Ageyeva, in her appeal to the BIA, argued that Dolenchuk might not have had any knowledge of her political activity. She makes this same argument in her petition for review. However, Ageyeva's affidavit stated that in 1996, at Iklymov's request, she and Dolenchuk took a sealed package containing documentation of human rights violations to Uzbekistan, from where it was to be delivered to Moscow. In addition, Ageyeva's affidavit stated that, since 1998, she had collected information about human rights violations that were to be transferred to the Voice of Freedom radio station in Moscow; that Dolenchuk brought the information to Moscow; and that she helped Dolenchuk bring the materials onboard a plane. Ageyeva's claim that Dolenchuk might

6

not have had any knowledge about her political activity completely ignores this evidence, which she provided herself.

The BIA also held that Ageyeva failed to explain the omissions from her daughter's affidavit, which, as noted, failed to mention her own arrest, and her brother's repeated arrests and beatings, and Ageyeva's arrest. At the hearing before the IJ, counsel for DHS asked Ageyeva several times why her daughter's affidavit failed to mention these arrests. Ageyeva first responded that her daughter "only send an affidavit regarding her, how she was treated." Later, she claimed her daughter was not arrested at all, but was only detained for two hours. The BIA was skeptical of these explanations and so are we. Like Dolenchuk's affidavit, Ageyeva's daughter's affidavit was prepared for Ageyeva's asylum application. Therefore, it makes no sense for Ageyeva's daughter's application not to include information that would help Ageyeva's claim, i.e., Ageyeva's arrest and her brother's arrests. Moreover, even if the daughter's affidavit only discussed what happened to her, there is no reason for her not to have mentioned her own arrest or detention, however brief it may have been.

With regard to Komarovsky's affidavit, the BIA found that Ageyeva was unable to explain why his affidavit did not mention her arrest. When asked specifically about this omission, Ageyeva was non-responsive. She stated that he was arrested, imprisoned for five months, and then came to the United States. In her brief, Ageyeva appears to claim that Komarovsky may not actually have known that she had been arrested. However, this is a completely different explanation than her non-responsive answer at the hearing.

7

Moreover, it is sheer speculation on Ageyeva's part.

In sum, because of the inconsistencies between Ageyeva's version of the events, as explained in her affidavit attached to her asylum application and her testimony at the hearing, and the affidavits of Dolenchuk, Ageyeva's daughter and Komarovsky, and because Ageyeva was unable to explain the inconsistencies, we conclude that the BIA's adverse credibility determination is supported by substantial evidence.

The BIA was also concerned by the absence of any corroboration. "[A]n applicant for asylum must provide reliable evidence to corroborate testimony when it is reasonable to expect corroborating evidence and there is no satisfactory explanation for its absence." *Sandie v. Att'y Gen.*, 562 F.3d 246, 252 (3d Cir. 2009) (citation omitted). "It is reasonable to expect corroboration for testimony that is central to an applicant's claim and easily subject to verification." *Id*. (citation omitted).

The BIA noted that there was no reason Ageyeva could not have obtained a more detailed affidavit from her daughter because Ageyeva was in regular contact with her.[3] In addition, Ageyeva conceded that she could have obtained an affidavit from her son. In her brief, Ageyeva contends that her son was unable to provide an affidavit because he was still living in Turkmenistan until one month before her hearing before the IJ. However, and assuming his presence in Turkmenistan is the reason he was unable to provide an affidavit when Ageyeva originally submitted her documentation, it does not

---

[3]In fact, Ageyeva's daughter called Ageyeva's cell phone during the hearing before the IJ to check on the status of her mother's case.

explain why he did not submit an affidavit after he left Turkmenistan and began living in the Ukraine.

With regard to her daughter, Ageyeva simply says that her daughter had already submitted an affidavit in support of Ageyeva's asylum application and did not need to submit a supplement. However, as DHS notes, her argument misses the point. The point is not that her daughter did not need to submit a supplement to her affidavit, but rather her daughter could have submitted a supplement, and Ageyeva offers no reason why her daughter could not have submitted a supplement.

With regard to corroboration from Komarovsky, Ageyeva claimed before the BIA that he was unavailable to testify at her hearing because he was testifying at another hearing in Canada on the day of her hearing. However, she does not explain why he could not have submitted a more detailed affidavit, even if he was not available to testify at her hearing.

For all these reasons, Ageyeva has not shown that further corroboration was unavailable. 8 U.S.C. § 1252(b)(4).

9

The BIA also upheld the IJ's denial of her claim for relief under the CAT, holding that she did not meet her burden of proof to sustain the CAT claim. Ageyeva's claim for relief under the CAT was premised on the same evidence she advanced for her applications for asylum and withholding of removal. The adverse credibility determination is therefore also dispositive of her CAT claim. *See Zine v. Mukasey*, 517 F.3d 535, 541 (8th Cir. 2008) ("When asylum, withholding of removal and CAT claims are based on the same discredited testimony, the adverse credibility finding is fatal to all three claims.") (citation and internal quotations omitted).

Finally, the BIA rejected Ageyeva's claim that she has a well-founded fear of future persecution in Turkmenistan. She contended that the background evidence and country reports indicate that Turkmenistan's government will persecute her or torture her if returned to Turkmenistan because she left the country and applied for asylum. However, she produced no credible evidence that the government of Turkmenistan even knew that she applied for asylum.

## IV.

For all of the above reasons, we will deny the petition for review.