**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1305
_____

MARTIN ALEJANDRO GUTIERREZ BORROVIC,
                                          Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                          Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-423-126)
Immigration Judge: Honorable Margaret R. Reichenberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 2, 2011

Before: FUENTES, VANASKIE AND NYGAARD, Circuit Judges

(Opinion filed: May 11, 2011)
_____

OPINION
_____

PER CURIAM

        Martin Gutierrez Borrovic, a Peruvian citizen, seeks review of a final order of the

Board of Immigration Appeals ("BIA").  For the following reasons, we will deny the

petition for review.

I.

Gutierrez entered the United States in November 2004 on a nonimmigrant visa, which he overstayed. After filing an application for asylum and withholding of removal. he was served with a Notice to Appear, charging him with removability under 8 U.S.C. § 1227(a)(1)(B). Gutierrez conceded removability but reaffirmed his application for asylum and withholding of removal. He also sought protection under the United Nations Convention Against Torture ("CAT"), or in the alternative, voluntary departure.

Gutierrez's claims are based on a series of encounters with the Shining Path that occurred while he was studying to become a Catholic priest. In 1999, the Church sent Gutierrez from a seminary in Guayaquil, Ecuador to a seminary in his hometown of Huánuco, Peru to continue his studies and to obtain pastoral experience. Accordingly, in the spring of 2000, he began working as a pastor on weekends, which involved making home visits and working on social justice projects. In July or August 2000, Gutierrez began receiving threats in the form of fifteen or sixteen leaflets that were left at the parish. The leaflets stated that the "[C]hurch was deceiving the population and stealing from the people." The leaflets also stated that if "they" did not back down, "they" would have problems or be killed.

Then, in September 2000, three people who identified themselves as members of the Shining Path "came in" and repeated the insults contained in the leaflets, and "told us that in order to avoid problems . . . we had to leave that zone and not to interfere with anything." Upon reporting this incident to his superiors at the seminary, Gutierrez was

2

told that he should quit working as a pastor. His superiors also told him not to report the incident to the police because they wanted to "keep it within the seminary."

Gutierrez remained at the seminary until January 2001. He was then invited by Father Oswaldo Rodriguez to help run a home for juveniles in Churubamba, Peru, which is located about an hour-and-a-half from Huánuco. He also participated in pastoral duties in Churubamba and the surrounding communities, which entailed evening visits to peasants, teaching catechism, and saying mass.

In June 2001, Gutierrez again received several threatening leaflets, accusing the Church of stealing from the community, calling him a dog, and threatening his life. The next month, four people entered the chapel and identified themselves as members of the Shining Path from Alta Huallaga. They told Gutierrez that he "was an obstacle against" their projects and that it "was not good that [he] was visiting the communities." When Gutierrez refused to stop his pastoral duties, the individuals grabbed him and forced him into a car. He was made to crouch uncomfortably behind the driver's seat for an hour-and-a-half while the kidnappers drove to Huánuco. During the drive to Huánuco, the kidnappers threatened to kill him, stating that they had killed other priests, and it "was no difference to . . . eliminate" him.

After being dropped off in front of the Huánuco cathedral, Gutierrez walked to his house. The next day he reported the incident to a judge and to Father Rodriguez and the Bishop. The Church superiors advised him to leave, and told him not to pursue the judicial complaint by going to the Truth Commission, the next step in the process. A few days later, Gutierrez left Huánuco and moved in with his sister in Lima. While there, his

sister-in-law, with whom he had lived in Huánuco, told him that people whom she did not recognize came to her house looking for him.

A week or so later, Gutierrez moved to Ecuador, where he remained until February 2003. Gutierrez experienced no problems in Ecuador, but testified that his sister-in-law received more visits from strangers in mid-2002. In February 2003, Gutierrez moved to Guatemala, where he also experienced no problems. His sister, who lived in Lima, told him that she had received several phone calls from people who said that he "should take care of [himself], and that the group Shining Path had eyes and ears everywhere." The calls stopped in 2003 when his sister changed her phone number and moved. Additionally, during the time Gutierrez lived in Ecuador and Guatemala, he returned to Peru without incident on three occasions.

Gutierrez left Guatemala in 2004 and came to the United States after being invited by a priest in Florida to work with the Hispanic community. He is no longer involved with the Catholic Church and has become a member of the Episcopalian Church. However, he believes that he would be in danger if he returned to Peru because "[f]or the Shining Path group, once they mark you, you're marked forever."

The Immigration Judge ("IJ") denied Gutierrez's claims for relief, determining that the incidents he described did not rise to the level of persecution, that he had not established a well-founded fear of future persecution, and that he failed to demonstrate that it was more likely than not that he would be tortured if he returned to Peru.

The BIA adopted and affirmed the IJ's decision, adding its own analysis.

Gutierrez has now filed a petition for review, which the government opposes.

4

II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). In this case, we review the decisions of both the BIA and the IJ. *See Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004). The decisions are reviewed under the substantial evidence standard and will be upheld "unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir. 2003) (internal citation omitted).

The IJ determined that the incidents described by Gutierrez, considered alone or cumulatively, do not amount to persecution. We agree. *See Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005) (reiterating that persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom") (internal citation omitted). While being forced into a car and held for almost two hours was undoubtedly traumatic, it is not persecution. *See, e.g., Kibinda v. Att'y Gen.*, 477 F.3d 113, 119 (3d Cir. 2007) (finding that five-day detention of a 16-year-old boy by Angolan army did not rise to the level of persecution, as the conduct complained of was not "extreme"); *cf. Voci v. Gonzales*, 409 F.3d 607, 614-15 (3d Cir. 2005) (finding that multiple severe beatings and intimidation tactics rose to the level of persecution). Further, although a death threat that occurred while being detained could be considered a threat of a "highly imminent and menacing nature," in this case the threat's impact is diminished because Gutierrez's kidnappers did not physically injure him. *See Li v. Att'y Gen.*, 400 F.3d 157, 164-65 (3d Cir. 2005). Moreover, neither the threatening leaflets nor phone calls amount to past persecution, whether considered alone

5

or in conjunction with the other incidents.  *See id.*  Accordingly, substantial evidence supports the determination that Gutierrez failed to demonstrate past persecution.

Gutierrez has declined to challenge the conclusion that he failed to demonstrate a well-founded fear or clear probability of future persecution, precluding success as to his request for withholding of removal.[1]  *See Zubeda*, 333 F.3d at 469-70.  Finally, we agree that Gutierrez failed to establish eligibility for CAT protection, as he did not offer sufficient evidence that he is likely to be tortured upon his return to Peru.  *See* 8 C.F.R. § 208.16(c)(4).

In sum, the evidence does not compel us to overturn the BIA's decision to deny the petitioner's claims, and for the foregoing reasons, we deny Gutierrez's petition for review.

---

[1] Gutierrez's brief on appeal argues that the BIA erred by "upholding the IJ's finding that the petitioner lacked credibility."  We note, however, that neither the IJ nor the BIA determined that Gutierrez was not credible.