**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2988
_____

XINLAI BI,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                              Respondent
_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency No. A087-789-273)
Immigration Judge: Hon. Philip Verrillo
_____

Submitted Under Third Circuit LAR 34.1(a)
March 5, 2015
_____

Before: SHWARTZ, SCIRICA, and ROTH, <u>Circuit Judges</u>.

(Opinion Filed: March 27, 2015)
_____

OPINION*
_____

SHWARTZ, <u>Circuit Judge</u>.

_____

  * This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

Xinlai Bi, a native and citizen of China, petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because the Immigration Judge ("IJ") and the BIA correctly concluded that Bi is ineligible for these forms of relief, we will deny his petition.

I

Bi entered the United States after the Chinese government seized and destroyed his homes in 1996, 1999, and 2009. On each occasion, the Chinese government compensated Bi, but he believed the compensation provided was inadequate. Bi and his family relocated after the 2009 seizure. While his new home was not convenient to schools or public transportation, he was able to care for himself and his family.[1]

Bi attempted to raise concerns about property seizure with the government and, to that end, formed an "anti-dismantling group" with other area residents. A.R. 131. Less than two weeks after Bi formed his group, he was arrested, told that he was "disturbing the society's order," and taken to the police station. A.R. 133. At the police station, an angry police officer handcuffed Bi to the ceiling facing a bright light. He said this caused him blurred vision, dizziness, and pain and swelling in his wrists.[2] Bi "could not bear this" and indicated he would cooperate, at which point officers unlocked the handcuffs

---

[1] Indeed, Bi vacationed in Italy, France, and Switzerland in 2008.
[2] Bi sustained "soft tissue damage on his retina, feet and wrists" as a result of this treatment. A.R. 43.

and took him to a chair. A.R. 134. The officers told Bi he would be fined for obstructing the government's dismantling of homes and "illegal assembling," but promised a monetary reward if he "assist[ed] the government" with the dismantling program. A.R. 135. Bi's wife paid the fine and Bi was released.

Bi felt that his neighbors were "avoiding [him]" because they believed he was cooperating with the government, but he feared he would be arrested if he failed to do so. A.R. 136. As a result, he left China, using a valid visa and passport. Since he left China, the police have looked for him "about five times" and advised that his "matter has not been resolved yet." A.R. 136.

Bi overstayed his visa and the Department of Homeland Security commenced removal proceedings against him. Bi sought asylum, withholding of removal, and CAT protection. The IJ found Bi's testimony to be credible but concluded that Bi was ineligible for these forms of relief. The IJ reasoned that Bi established neither conduct sufficiently severe to constitute past persecution based on his detention or the allegedly inadequate compensation for his homes, nor an objectively well-founded fear of future persecution. The IJ also noted that Bi had provided a U.S. State Department report on China that reflected "a negative trend" in its human rights record, but concluded that the report did not demonstrate that Bi "would be specifically targeted if returned to China." A.R. 49-50. Thus, the IJ held that Bi could not meet his burden for asylum or withholding of removal, and that he did not show that he would more likely than not be

3

tortured if returned to China. The BIA agreed with the IJ and dismissed Bi's appeal. Bi petitions this Court for review of the BIA's decision.[3]

## II

Resolution of Bi's petition requires consideration of the standards for asylum, withholding of removal, and protection under the CAT. An applicant for asylum must establish an inability or unwillingness to return to the country to which he will be removed "because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Garcia v. Att'y Gen., 665 F.3d 496, 503 (3d Cir. 2011) (alterations and internal quotation marks omitted); see 8 C.F.R. § 208.13(b). A "well-founded fear of future persecution" requires both "subjective apprehension" and a showing "that a reasonable person in [the applicant's] position would fear persecution, either because he would be individually singled out for persecution or because there is a pattern or practice in his home country of persecution against a group of which he is a member." Huang v. Att'y Gen., 620 F.3d 372, 381 (3d Cir. 2010) (internal quotation marks omitted). Withholding

_____

[3] The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15, and we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). See Garcia v. Att'y Gen., 665 F.3d 496, 502 n.4 (3d Cir. 2011). We review legal questions de novo and the BIA's and IJ's factual findings under an "extraordinarily deferential standard," where "findings of fact will be upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 502 (internal quotation marks and alteration omitted). We may decline to uphold factual findings, including whether an applicant has demonstrated persecution or a likelihood of torture, "only if the evidence compels a contrary conclusion." Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007) (internal quotation marks omitted); see Kibinda v. Att'y Gen., 477 F.3d 113, 123 (3d Cir. 2007) (applying "compel a contrary conclusion" standard to CAT claim).

of removal similarly turns on persecution: the applicant must show "that there is a clear probability of persecution in the country to which [the] applicant will be removed." Id. at 502-03 (internal quotation marks omitted); see 8 C.F.R. § 208.16(b). This is a "higher standard" than that for asylum, so "an applicant who does not qualify for asylum also does not qualify for withholding of removal." Guo v. Ashcroft, 386 F.3d 556, 561 n.4 (3d Cir. 2004).

"Persecution" encompasses "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). "[T]he concept of persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Id.; see also Li v. Att'y Gen., 400 F.3d 157, 167 (3d Cir. 2005) ("Fatin made clear that 'persecution' denotes 'severe' conduct."). Thus, "brief detentions, where little or no physical harm occurs, generally do not rise to the level of persecution." Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 342 (3d Cir. 2008).

To qualify for protection under the CAT, the applicant "must establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Kibinda v. Att'y Gen., 477 F.3d 113, 123 (3d Cir. 2007) (internal quotation marks omitted); see 8 C.F.R. § 208.16(c). "Torture" under the CAT "is an extreme form of cruel and inhuman treatment" that is inflicted by or with the acquiescence of a public official and "specifically intended to inflict severe physical or mental pain or suffering." 8 C.F.R. § 208.18(a)(1), (2), (5); see also Auguste v. Ridge, 395 F.3d 123, 143-44 (3d

Cir. 2005) (applying "specific intent" standard under this regulation). This is a "more stringent" standard than that for asylum, although "it does not follow that a failure to meet the asylum standard necessarily precludes a CAT claim." Kibinda, 477 F.3d at 123.

Here, the IJ and the BIA concluded that the facts do not support eligibility for asylum, withholding of removal, or protection under the CAT, and the record does not compel a contrary conclusion. Bi has not shown past persecution or a well-founded fear of future persecution to justify asylum or withholding of removal. Bi's brief detention and mistreatment by the police, while undoubtedly painful, does not rise to the level of past persecution, which must be severe and involve "a threat to life or freedom." Fatin, 12 F.3d at 1240; cf. Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007) (holding two brief detentions by Syrian government, which included a two-day detention and physical abuse that produced bruising, were "harassing and intimidating" and "deplorable," but did not rise to the level of persecution). Similarly, the allegedly inadequate compensation Bi received for his seized homes does not rise to the level of past economic persecution, as Bi's testimony reveals only that he and his family were inconvenienced by the government's actions. Bi also has not demonstrated an objectively reasonable fear of future persecution, as the record does not compel the conclusion that he is likely to be subjected to conduct rising to the level of persecution if he is returned to China, particularly given that he was able to freely leave the country and that his family has remained unharmed. Bi's CAT claim fails for similar reasons: the evidence does not compel the conclusion that it is more likely than not that Bi will be

6

tortured, as his detention by the police did not rise to the level of "torture" and there is no indication, either from the State Department report or from other evidence, that he will be singled out for harsher treatment upon his return to China.

III

For these reasons, Bi has not demonstrated his entitlement to asylum, withholding of removal, or protection under the CAT, and we will therefore deny his petition for review.