**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-4779
_____

TIAN HUA YANG
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES
OF AMERICA,
                              Respondent

_____

On Petition from the Final Order of the
Board of Immigration Appeals
(No. A087-980-865)
Immigration Judge: Miriam K. Mills

Submitted Under Third Circuit LAR 34.1(a)
December 10, 2015

Before: FUENTES, CHAGARES, and GREENBERG, Circuit Judges

(Filed: March 11, 2016)

_____

OPINION*

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Fuentes, *Circuit Judge*:

Tian Hua Yang, a native and citizen of China, applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") on account of his Christian faith. The Immigration Judge ("IJ") denied all forms of relief, and the Board of Immigration Appeals ("BIA") dismissed Yang's appeal. The BIA upheld the IJ's adverse credibility finding and, in particular, the IJ's determination that Yang's asylum claim was time-barred because his testimony was not credible as to when he entered the United States. The BIA also agreed with the IJ's alternative determination that, even if Yang had been found credible, he did not satisfy his burden of proof for withholding of removal or his CAT claim. Specifically, the BIA noted that Yang failed to show that it was more likely than not that he would be subject to persecution or torture if removed to China. Yang filed the present petition for review.[1]

For the reasons that follow, we will deny the petition.

## I. BACKGROUND

Yang entered the United States by crossing the United States-Mexico border illegally in December 2009. In April 2010, the Department of Homeland Security ("DHS") served Yang with a notice of removal as an alien present in the United States unlawfully. On July 30, 2010, Yang conceded the charge of removability before the IJ, as he had entered the country illegally through the Mexican border. That same day, he

---

[1] The BIA had jurisdiction over Yang's appeal under 8 C.F.R. §§ 1003.1(b) and 1240.15. To the extent that we exercise jurisdiction over this petition, we do so under INA § 242(a)(1).

submitted an application for asylum, withholding of removal, and CAT relief.[2]  Yang's application was based on his Christian faith and purported arrest and detention by his village's chief of police in China based on an accusation that he was spreading cult activities.

The IJ held a merits hearing on Yang's application.  At the hearing, Yang testified that he left China for the United States because he was persecuted for his Christian beliefs.  He stated that in December of 2007, the "village leader" and six staff members came to his home, accused him of "spreading the agenda of being a cult," and ordered him to stop.[3]  He further stated that he had been preaching Christianity and said that what he was preaching was considered to be "orthodox," but the officers did not believe him.[4]  He said that the officers then searched the store owned by Yang's mother and burned his flyers that contained a Christian message.[5]

Yang also testified that, after the officers searched the store, they arrested him and his father and held them overnight in the village center.[6]  He further claimed that the

---

[2] It appears that this was, as a matter of form, a resubmission, as Yang had previously submitted the same application with the USCIS Vermont Service Center in March of 2010.

[3] (A.R. at 125.)

[4] *Id.*

[5] (A.R. at 126.)

[6] *Id.*

officers wanted him to cease any preaching in support of his religion and pay a fine.[7] Yang stated that, on another occasion, he was taken into custody by certain public safety officers based upon allegations that his employer was advocating for Taiwanese independence and "preaching cult." [8]   Yang claimed that he was then interrogated, and that he was beaten in the head and back with a stick after he refused to answer questions.[9] He also claimed that he was thereafter detained for two weeks and ordered to report to the police station once a week.[10]

Overall, Yang's testimony was controverted and inconsistent.  For example, the date he provided as to when he reportedly began attending a congregation in Brooklyn, New York was contradicted by at least two letters from the church that contained different dates.[11]   Yang also claimed that he flew to the United States on a "private helicopter," but that he did not know where the helicopter took off or landed.[12]  He later contradicted this testimony, claiming that he came to the United States by airplane.[13] When asked if he sought medical treatment after he was released by the authorities in

---

[7] (A.R. at 128.)

[8] (A.R. at 130.)

[9] *Id*.

[10] (A.R. at 132.)

[11] (A.R. at 135, 144, 302, 319.)

[12] (A.R. at 154.)

[13] (A.R. at 154-155.)

China, Yang stated that he "went to get checked out" but that he did not bring the medical records from his visit with him to the United States.[14] Yang also presented contradictory testimony regarding the dates of his arrest in China, claiming at one point that he was arrested in December 2009, and at another point stating that his arrest took place on October 1, 2009 or at the end of September, 2009.[15] Yang claimed that the reason he did not report anything to the Chinese authorities as directed was because he thought doing so would cause trouble for his fellow parishioners. Yet, Yang later said that he was not aware of anything otherwise happening to his fellow parishioners, nor did he believe that reporting would have ultimately affected them.[16]

Yang's father also submitted an affidavit in support of his application for relief. His father's account, however, varied and contradicted Yang's testimony about the raid of his mother's store. Specifically, his father claimed that the authorities raided his house and burned leaflets and Bibles, not that the authorities raided his mother's store.[17]

The IJ denied Yang's application for relief, concluding that Yang had failed to demonstrate his statutory eligibility for withholding of removal under INA § 101 (a)(42)(A). On appeal, the BIA agreed with the IJ's conclusion, namely that Yang's

---

[14] (A.R. at 158.)

[15] (A.R. at 159-162.)

[16] (A.R. at 81, 165, 201.)

[17] (A.R. at 434.)

corroborative evidence did not satisfy his burden of proof and affirmed the IJ's ruling. This petition for review followed.

## II. DISCUSSION

Under INA § 208(a)(2), an alien seeking asylum must demonstrate by clear and convincing evidence that he filed his application within one year of the date of arrival in the United States. The agency found that Yang did not meet this requirement, and we do not have jurisdiction to review this finding.[18] We therefore cannot review Yang's asylum claim.

With respect to Yang's withholding of removal and CAT claims, generally we review adverse credibility determinations under the substantial evidence standard, keeping in mind that the IJ is in the best position to ascertain an applicant's credibility.[19] Here, there is evidence in the record that Yang provided inconsistent testimony not only with respect to how and when he entered the United States, but also regarding the alleged incidents that occurred in China that caused him to flee. Yang's testimony and written statements are also controverted by the written statements of his father, including the account of the village chief's raid of his mother's store. We therefore conclude that the record does not compel reversal of the agency's adverse credibility determination.

The agency also found that, even if Yang were credible, he did not establish harm rising to the level of persecution or torture. Yang gives little attention to this alternative

---

[18] (A.R. at 5); INA § 208(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under [INA § 208(a)(2)].").

[19] *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998).

finding in his brief and has arguably waived it.[20]  Nevertheless, we conclude that the agency's finding was accurate.  Yang testified that he was arrested and held overnight, and then detained a second time for a week, during which he was interrogated for two hours and struck on the back of his head and his back with a stick.  He testified that he sought medical treatment, but could not offer any medical records to corroborate his claim.  Under our case law, these isolated incidents do not rise to the level of past persecution to create a presumption of future persecution.[21]

**III. CONCLUSION**

For all of these reasons, we will deny the petition for review.

---

[20] *Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.,* 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring the issue before this court") (internal quotation marks omitted).

[21] *See Kibinda v. Att'y Gen.*, 477 F.3d 113 (3d Cir. 2007); *Jarbough v. Att'y Gen.*, 483 F.3d 184 (3d Cir. 2007).